579 A.2d 392

**Patricia A. ROSKI, Administratrix of the Estate of Walter Roski, Deceased**

**v.**

**HALFWAY HOUSE, INC., Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued March 21, 1990.

Filed Aug. 7, 1990.

Reargument Denied Sept. 17, 1990.

Petition for Allowance of Appeal Granted
Nov. 27, 1990.

Jay M. Levin, Philadelphia, for appellant.

Joseph R. Danella, Philadelphia, for appellee.

Before OLSZEWSKI, JOHNSON and HOFFMAN, JJ.

OLSZEWSKI, Judge:

The Halfway House appeals from the judgment awarding Walter Roski's estate $50,000 and delay damages. We find

that the trial court properly dismissed Halfway House's post-trial motions; accordingly, we affirm.

Walter Roski was shot in the elbow during the course of a robbery at the Halfway House, a bar. Roski sued the Halfway House, alleging that it was negligent in failing to protect its customers adequately. On November 4, 1987, the trial court, as factfinder, found that Halfway House was liable to Roski for $50,000 in damages for pain and suffering. On November 12, 1987, Halfway House's counsel filed a post-trial motion and certified that the notes of testimony were ordered. Two months later, the attorney in charge of the case retired and moved to Florida, leaving no instructions regarding this case.

The next docket entry in this case is Roski's April, 1989 motion to dismiss the motion for post-trial relief. Roski alleged that Halfway House failed to order a transcript as required by Philadelphia Local Rule 240(c)(4) and failed to exercise due diligence in having the transcript prepared. The trial court found that the Halfway House's counsel either failed to order the transcript or failed to exercise due diligence in having the transcript prepared. The trial court dismissed appellant's post-trial motion pursuant to Philadelphia Local Rule 240(c)(4).

▉▉▉ Philadelphia Local Rule 240(c)(4) provides:
Counsel filing exceptions or post-trial motions shall insure that the notes of testimony, if required, are ordered from the court reporter and shall notify the Post–Trial Motion Clerk in writing when the notes have been ordered. In cases in which there is no dispute about the notes to be transcribed, counsel filing the exceptions or motions shall order the notes from the court reporter within five (5) days after the filing of the exceptions or motions and immediately so notify the Post–Trial Motion Clerk in writing. . . .

Failure to order the notes of testimony or to notify the Post–Trial Motion Clerk that they have been ordered where it is certified that they are necessary shall result in

the imposition of sanctions including the dismissal of the exceptions or motions.

The obvious purpose of Rule 240(c)(4) is to ensure that the notes of testimony are provided expeditiously so that the motion can be decided. *See DeFazio v. Labe,* 518 Pa. 390, 395, 543 A.2d 540, 545 (1988). Due to the conduct of Halfway House's counsel, the transcript was not prepared promptly and this action was delayed for well over a year. Consequently, the dismissal sanction was exercised appropriately in this case.

Our Supreme Court has held that a trial court may apply Rule 240(c)(4)'s sanctions when counsel fails to pay the deposit for a transcript, even though counsel has ordered the transcript. *DeFazio, supra,* 518 Pa. at 395, 543 A.2d at 545.[1] The Supreme Court noted that counsel who does not pay the requisite deposit delays the preparation of the transcript, thereby thwarting the purpose of the rule. Accordingly, the Court approved the trial court's finding that ordering a transcript without making a deposit does not constitute an "order" under the Rule. *DeFazio, supra,* 518 Pa. at 395, 543 A.2d at 545.

The present case is substantially similar to *DeFazio.* There is no evidence that appellant's counsel ever made a deposit. The evidence shows that the firm failed to exercise due diligence in ensuring that the transcript was prepared. The firm took no action regarding this case until appellee moved to dismiss the post-trial motion seventeen months after it was filed. Under the circumstances, we hold the trial court acted within its discretion in finding that appellant's counsel did not "order" the transcript, and in dismissing appellant's post-trial motions. Consequently, we affirm.

The dissent points out that the transcript was provided before the trial court dismissed the post-trial motions. We do not find this fact relevant, nor do we find that appellant has "substantially complied" with the rule. The rule is

1. Although the *DeFazio* court was divided on other issues, five of the six Supreme Court justices reviewing the case joined Justice Papadakos' opinion regarding Rule 240(c)(4).

designed to ensure expeditious disposition of motions. Appellant's conduct did not promote this goal, but actually thwarted it. Appellant delayed this proceeding for seventeen months, and produced the transcript only upon threat of dismissal. The fact that appellant managed to produce a transcript within two months of the motion to dismiss only proves that appellant could have produced the transcript expeditiously if counsel had acted with due diligence in the first place.

The dissent also contends that the trial court imposed sanctions for a violation of ABA Rules of Professional Conduct. Although the trial court mentioned these rules, we find that the court did not base its decision upon them. The court did not punish appellant for attorney misconduct; it punished appellant for delay, as Local Rule 240(c)(4) requires. The trial court's discussion of ethical rules is nothing more than dicta and is irrelevant to this appeal.

■ Nor do we find that the trial court erred in failing to consider prejudice. The local rule mandates sanctions when a party fails to order a transcript; it does not require consideration of prejudice. Even if prejudice were an issue, we would find that a seventeen-month delay in consideration of post-trial motions is inherently prejudicial.

Given our holding that the trial court properly dismissed the post-trial motions, we need not address the merits of this appeal. Nevertheless, we note that we have reviewed appellant's issues and find them meritless.

Order dismissing post-trial motion is affirmed. Judgment affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

I believe that the trial court abused its discretion in dismissing Halfway House's post-trial motions. Thus, I respectfully dissent. Halfway House was actually in compliance with the local rule in question at the time that the court dismissed its post-trial motions. I would also hold

that the trial court misinterpreted the law with regard to the duty that the Halfway House owed to its patrons. Thus, I would reverse the judgment entered on October 6, 1989 and remand for entry of judgment in favor of Halfway House.

It is true that, under former Philadelphia Local Rule 240(C)(4), now Star Rule *227.1(D)(3), the trial court is empowered to impose the sanction of dismissal should a party not comply with the rule. *See DeFazio v. Labe*, 518 Pa. 390, 540 A.2d 540 (1988). It is also true that we will not reverse a trial court for waiving or refusing to waive noncompliance with procedural rules in the absence of an abuse of discretion that has caused manifest and palpable injury to the complaining party. *Gagliardi v. Lynn*, 446 Pa. 144, 151, 285 A.2d 109, 112, (1971); *DeFazio v. Labe, supra.* However, judicial discretion requires action in conformity with the law based upon the facts and circumstances before the court, after hearing and due consideration. *In re Philadelphia County Grand Jury*, 347 Pa. 316, 32 A.2d 199 (1943). My review of this case leads me to conclude that Halfway House was in compliance with the rule at the time that the court dismissed the post-trial motions; the court had the transcript and the motions before it and could have addressed the merits of the motion.

The trial court found that the Halfway House either did not order the notes, in violation of former Rule 240, *or* failed to follow-up to insure that the notes were transcribed. The trial court based its conclusions on the one and one-half year period which elapsed between the date that post-trial motions were filed certifying that the notes of testimony were needed and Roski's petition to dismiss post-trial motions. The record indicates that the Halfway House did order the notes of testimony. Both in its motion for post-trial relief and in its notice to the post-trial motions clerk, the Halfway House stated that the notes had been ordered. This conclusion is buttressed by the affidavit of an attorney for the Halfway House, which states that the attorney personally called the transcriber and ordered the notes,

568

although he admitted that he did not follow through and see that the required deposit was paid. In the record is a file copy of a letter sent to the transcriber, confirming the telephone conversation and inquiring about the transcription fee.

By the time that the trial court entered its order to dismiss post-trial motions on July 25, 1989, the transcription fee had been paid, and the notes had been transcribed as evidenced by the Halfway House's memorandum of law in support of post-trial motions, filed on July 17, 1989, which attaches the relevant portion of the transcript. The Halfway House asserts, and Roski does not deny, that this transcript was provided to the court before it dismissed post-trial motions. The facts in the case now before us are to be distinguished from the facts in *DeFazio v. Labe, supra,* where the post trial motion was dismissed before the transcript fee had been paid and before the transcript had been produced. Moreover, *DeFazio* involved an appeal where the trial court had found, alternatively, that the post-trial motion was without merit and this finding was not disputed on appeal to our Supreme Court. 518 Pa. 390, at 398, 540 A.2d 540, at 544.

The clear purpose of former Rule 240 is to have the notes of testimony provided in an expeditious manner so that a pending case may be decided. It is not evident that the purpose behind the local rule is purely to punish a neglectful movant. The trial court had before it the materials necessary to address the Halfway House's claims on their merits, as is the purpose of Rule 240(c)(4). I find nothing of record to indicate that Roski was prejudiced by the delay. Neither did the court discuss prejudice or make any decision concerning prejudice, as it viewed its imposition of the dismissal purely as a sanction for attorney misconduct. Where a party has substantially complied with the requirements of a rule and no prejudice would result, our Supreme Court has instructed us to overlook procedural deficiencies. *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 571–74, 517 A.2d 1270, 1272–73

(1986); *Pomerantz v. Goldstein*, 479 Pa. 175, 178, 387 A.2d 1280, 1281 (1978). I conclude that the court abused its discretion by dismissing the motions.

Just as important, the trial court impermissibly used the sanction of dismissal to punish what it saw as a violation of the rules governing attorneys' conduct. The court's opinion indicates that it dismissed the post-trial motions because Halfway House's attorney failed to exercise due diligence as is prescribed for attorneys in Rule 1.3 of the American Bar Association Model Rules of Professional Conduct. After citing to the A.B.A. Model Rules the trial court concluded:

> Under all the circumstances of this case, this Court was of the opinion that there was no merit in defendant's Motion for Post Trial Relief due to defendant's lack of due diligence in pursuing the Notes of Testimony. Therefore, this Court dismissed defendant's Motion.

Opinion, 10/11/89 at 9.

It is well-established that violation of the Code of Professional Responsibility (since replaced by the Rules of Professional Conduct, effective April 1, 1988) is "not a proper subject for consideration of the lower courts to impose punishment for attorney ... misconduct." *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 220, 489 A.2d 1291, 1299 (1985). The Rules of Professional Conduct do not have the force of substantive law. *Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984). Because the trial court improperly based its decision to dismiss—at least in part—upon such a violation, the court improperly applied the law and thus abused its discretion.

Having found abuse of discretion in the dismissal, I would address Halfway House's remaining issues on appeal, which are as follows:

   I. SHOULD A BAR OWNER WHO HAS TWO BARTENDERS ON THE PREMISES OF A "NICE BAR" BE HELD LIABLE FOR INJURIES SUSTAINED BY A PATRON DURING AN ARMED ROBBERY WHEN THERE IS NO EVIDENCE OF

ANY PRIOR CRIMES OR DISORDER IN THE BAR OR IN THE NEIGHBORHOOD?

II. DID THE TRIAL COURT ERR IN REPEATEDLY PERMITTING INTRODUCTION OF PREJU-DICIAL HEARSAY TESTIMONY AT THE TRI-AL?

III. WAS THE TRIAL COURT'S AWARD OF DAM-AGES JUSTIFIED IN THE COMPLETE AB-SENCE OF ANY MEDICAL TESTIMONY?

IV. DID THE TRIAL COURT ERR IN PERMITTING THE TRIAL TO GO FORWARD WHEN THERE WAS NO DULY APPOINTED REPRESENTA-TIVE OF THE ESTATE.?

The Halfway House argues that there is insufficient evidence to support a finding that the bar was negligent in not providing for its patrons protection beyond that which could be provided by the two bartenders on duty at the time of the armed Robbery in which Roski was injured. It contends that there is no evidence that the bar owners should have been aware of the possibility that their patrons would be harmed while on the premises and that therefore the protection provided was sufficient. I would agree.

The duty of a property owner to protect its business invitees against the acts of third parties is defined by the Restatement (Second) of Torts § 344 as follows:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the acciden-tal, negligent, or intentionally harmful acts of third per-sons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The finder of fact must determine that the owner either failed to take reasonable care to discover third party conduct which is occurring or likely to occur, or the owner failed to take reasonable care to provide proper precautions. *Murphy v. Penn Fruit Co.*, 274 Pa.Super. 427, 418 A.2d 480 (1980).

Restatement (Second) of Torts § 344 comment f elaborates upon these requirements in the context of visitor safety:

> *Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

In establishing liability in this case, the trial court reasons that "[t]he Halfway House, Inc., is a bar, which invites the public in its premises and serves alcoholic beverages. As a result, it is not unreasonable to assume that bars may reasonably invite violence, especially since money is usually on the premises." Hence, the trial court seeks to rely upon the character of this business in finding liability.

I find no support for the trial court's position. Many establishments, not bars exclusively, serve alcoholic beverages and keep money on their premises. It is unreasonable to assume that each such place—restaurants, social clubs, theaters—would naturally attract violence. A distinction between these places and a bar which properly monitors the

conduct of its patrons, in the absence of any other warning factors, would have no basis. Thus, I reject the trial court's assumption that the Halfway House should have been aware of the possibility that there might occur acts which would pose a danger to its patrons simply because of the type of premises that they owned. Accordingly, there must have been introduced at trial evidence of conduct occurring on the Halfway House's premises of which the owner was or should have been aware, and from which its patrons might be injured.

The only evidence admitted at trial was the deposition testimony of Roski. In this deposition, Roski admitted that he believed the Halfway House was a "nice" bar. However, Roski said that he returned to the bar after the shooting, where he spoke with a couple of police officers who indicated that the Halfway House was a "bookie place" which had been raided a couple of times. Roski also stated that he was told that the Halfway House kept large sums of money on the premises. Roski acknowledged that this information was simply second-hand gossip for which he had no personal knowledge, nor did he know anyone with personal knowledge. Roski also claimed that one person he spoke with at the Halfway House was a bookie and conducted his business from the Halfway House.

This entire line of deposition testimony was properly objected to by the Halfway House at trial on hearsay grounds. The trial court did not rule upon Halfway House's objections. Nonetheless, it seems from the trial court's opinion that this evidence was not relied upon. Rather, the trial court appears to have relied upon the bar's presumed innate character. In the absence of this hearsay evidence, there remains no evidence which would suggest that the Halfway House is anything but a nice bar which properly monitored the conduct of its patrons. There is neither evidence that the robbery was the result of unruly conduct by patrons nor evidence that the bar should have anticipated the robbery because of its locality or past experiences.

It is the duty of the owner of a bar to keep the bar orderly and reasonably well policed. This duty is fulfilled where the owner instructs that the bartender on duty maintain order, unless there is reason to believe that more protection is necessary. *See Howard v. Zaney Bar*, 369 Pa. 155, 85 A.2d 401 (1952). Since there is no indication here that the owners should have been aware of any conduct which could harm their visitors and thus would give rise to the need for more protection, the owners were not negligent in leaving its premises solely under the supervision of the two bartenders on duty. Because of my resolution of the Halfway House's first two issues, I would not reach the remaining issues. Hence, I would reverse the $50,000.00 judgment in favor of Roski's estate as well as the order entered amending the $50,000.00 judgment to include delay damages of $35,225.00, for a molded verdict of $85,225.00.

For all these reasons, I would reverse the judgment entered October 6, 1989 and remand to the trial court for entry of judgment in favor of the Halfway House.