## Rosa v. 1220 Uncle's Inc.

*Andrea McCormick,* for plaintiff.
*Richard L. Hahn,* for defendants.

BRINKLEY, *J.,* March 30, 2001—Defendant 1220 Uncle's Inc. has filed an appeal of this court's judgment in favor of plaintiff Ezequiel Rosa, entered on June 22, 2000.

## I. PROCEDURAL HISTORY

The plaintiff, Ezequiel Rosa, brought an action against the defendants for damages he suffered as a victim of a robbery in the bathroom of defendant 1220 Uncles Inc. Rosa sought damages for the physical and psychologi-

cal injuries he suffered. The matter went to compulsory arbitration on September 27, 1999. The Board of Arbitrators awarded Rosa $24,654.30. Both defendants, Uncles and Tyrone Clarkson a/k/a Tyrone Clarkson-Bey were found equally liable for 50 percent of the award. Defendant Uncles appealed from the award of the arbitration and the case came before this court de novo. A trial was held before this court sitting without a jury on June 21, 2000. This court found in favor of Rosa and against Uncles and Clarkson, jointly and severally, for the amount of $10,000, apportioning their actual responsibility for the injuries at 50 percent each. Uncles filed post-trial motions for a judgment n.o.v. on June 29, 2000 which was denied on January 19, 2001. Uncles then filed this appeal to the Superior Court on February 1, 2001.

## II. FACTUAL HISTORY

On July 16, 1997, at or about 11:45 p.m. Rosa entered the establishment at 1220 Locust Street known as Uncles. (N.T. 19.) Rosa was accompanied by two friends, Christine Gezinsky and David Anifin. (N.T. 19.) Gezinsky prompted the stop at Uncles because she was looking for a friend of hers that frequented the bar. (N.T. 19.) There was a red sign on the front door that indicated there was continuous surveillance of the premises. (N.T. 20.) No one stopped the three to inspect their identification as they entered Uncles. (N.T. 20.) The bar had loud music playing and Rosa had to speak very loudly and use his hands for his friends to understand him. (N.T.

21.) Rosa proceeded to inquire as to the location of the men's restroom and another patron of the bar indicated where it was. (N.T. 19.) Rosa took his black briefcase type bag to the bathroom with him to comb his hair. (N.T. 21.) There was no lock on the inside of the men's room. (N.T. 22.)

As Rosa was fixing his hair, another male entered the bathroom and asked Rosa for a couple of dollars. (N.T. 23.) Rosa responded that he did not have any money to spare and continued his styling as the male entered a stall. (N.T. 23.) When the man came back out of the stall he again approached Rosa, this time with more force. (N.T. 24.) The man touched Rosa's hair and attempted to kiss him. (N.T. 24.) Rosa resisted these advances and told the man to leave him alone. (N.T. 24.) The assailant then became angered and maneuvered Rosa into a chokehold. (N.T. 24.) Rosa tried to yell for help. (N.T. 24.) Someone tried to enter the restroom during the attack and the man threw himself and Rosa into the door to prevent it from opening. The attacker took cash and a credit card from Rosa's pocket and then took out a knife and cut Rosa's face. (N.T. 24-25.) Rosa attempted to resist and hit the man with his Snapple bottle but it broke into pieces and the man ran out of the bathroom. (N.T. 25.) Rosa ran out after him and yelled to the bartender for help and to call the police. (N.T. 25.) Gezinsky tried to stop the assailant from exiting and the man threw her to the ground. (N.T. 26-27.) Rosa then left Uncles after his attacker and followed him. (N.T. 29.) Rosa thought the man who attacked him was drunk. (N.T. 28-29.) When the attacker saw Rosa following him, he turned around and tried to cut Rosa in

the stomach. (N.T. 53.) Rosa flagged down a passing police officer and the man was subsequently apprehended and identified as Clarkson. (N.T 30-31.) Rosa was taken to Thomas Jefferson Hospital where he received stitches. (N.T. 34.)

Rosa has since been treated by a psychologist and a plastic surgeon for the injuries he suffered. The psychologist, Dr. Steven Batoff, treated Rosa for a year following the robbery, for the nightmares, flashbacks, and low self-esteem which resulted from the attack. (N.T. 34-35.) Rosa also consulted with a plastic surgeon, Dr. Susan Hughes, about the scarring caused by the cuts he received. (N.T. 37.) Dr. Hughes gave Rosa a chemical peel and an at-home treatment to lessen the scar's appearance. Rosa hopes to have further treatment to lessen the scarring but is unable to financially arrange such treatment. Because of the robbery and the resulting injuries, Rosa had to leave his job at Ralph Lauren, must wear glasses, cannot visit the city alone and cannot watch horror movies. (N.T. 37-40.)

There was also testimony from the owner of Uncles, Morton Wernick, regarding safety precautions taken by employees. (N.T. 66-69.) Additionally, Wernick stated that there previously had been a robbery at Uncles in 1996. (N.T. 69.) In 1996, the bartender of Uncles was held up at gunpoint. There was a panic button behind the bar and after the first robbery, security cameras were set up throughout the bar. (N.T. 70-71.) Wernick was the only one who reviewed the footage from the security cameras. (N.T. 71.) Sometimes a week would pass before the tapes would be reviewed, and after a month

they were reused. (N.T. 72, 77.) When Wernick was not at the bar, there was no one watching the security television monitor. (N.T. 72.) Wernick was not present at Uncles the night of either robbery. (N.T. 67-68.) There was no one who checked identification at the entrance to Uncles. (N.T. 73.) Bartenders checked identification based on whether or not someone appeared young. (N.T. 75.) No security personnel were employed by Uncles. (N.T. 73.) No signs were posted in the bar advising patrons to guard their personal belongings. (N.T. 74.)

## III. ISSUES

A. Whether the court's ruling was supported by the weight of the evidence.

B. Whether the defendant was negligent based upon actual or constructive notice of the danger to plaintiff.

C. Whether Uncles was negligent and contributed to Rosa's injuries.

## IV. DISCUSSION

### A. *The Court's Verdict Was Proper in Light of the Evidence Presented*

"When considering whether the record supports the trial court's decision [appellate courts] generally defer to the trial court's judgment because, by virtue of its position, it is uniquely qualified to determine factual matters." *Coker v. S.M. Flickinger Co. Inc.,* 533 Pa. 441, 625 A.2d 1181 (1993), quoted in *Summers v. Giant Food Stores Inc.,* 743 A.2d 498, 506 (Pa. Super.

1999). An appellate court is not empowered to substitute its opinion for that of the trial judge regarding the sufficiency and weight of the evidence because of the disparity in vantage points. *Summers,* 743 A.2d at 506 (citing *Thomas v. City of Philadelphia,* 507 Pa. 592, 599, 493 A.2d 669, 672-73 (1985)). If the record adequately supports the determinations of the trial court and the reasons given by the trial court for its decisions, there will be no abuse of discretion and the judgment will stand. *Summers,* 743 A.2d at 506. It is not the role of appellate courts to pass on the credibility of the witnesses nor to act as the trier of fact, that is the sole province of the fact-finder, whether it be the trial court, judge or the jury. *Schultz by Schultz v. DeVaux,* 715 A.2d 479 (Pa. Super. 1998).

In this case, evidence was presented by both parties through direct testimony and cross-examination of three witnesses. The witnesses were found credible by this court and there was sufficient factual testimony to prove the offense alleged. Rosa was robbed in the bathroom of Uncles. Morton Wernick testified to his knowledge of the incident and that of a prior robbery at the bar in 1996 which involved a bartender being shot. However, there were no adequate security measures in place to prevent this robbery of Rosa. Although security cameras were installed, they were not being monitored on a regular basis. There was no lock on the bathroom door of the men's room. There were no security personnel or bouncers on duty at the bar. After the attack, Rosa asked the bartender to call 911 and there was no response. After Rosa followed his assailant from the bar

and flagged down a police officer, a police report was filed which related the events of the evening. There was sufficient evidence presented in this case to support the court's finding of liability on behalf of the defendants.

## B. *The Owner of Uncles Had Notice Violence Could Occur in His Establishment and Therefore Had a Duty To Warn or Protect Rosa From Such Harm*

### 1. Uncles and Its Owners Have a Duty Toward Bar Patrons

The determination of whether a duty exists is peculiar to each set of facts presented to the fact-finder. *Hutchinson v. Luddy,* 763 A.2d 826, 849 (Pa. Super. 2001). The legal concept of duty of care is inherently connected to public policy considerations. *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000). Factors to be weighed in determining the existence of a duty include: the relationship between the parties; the social value of the actor's conduct; the type of risk involved and the forseeability of harm; the consequences of imposing such a duty and the overall public interest in the end to be achieved. *Id.* The situation at issue in this matter is governed by the Restatement (Second) of Torts. Section 314(A) describes the special relationships which give rise to a duty to act affirmatively to protect a third party. "A possessor of land who holds it open to the public" is under a duty to protect "members of the public who enter in response to his invitation." Restatement (Second) of Torts §314(A)(3) (1965); *T.A. v. Allen,* 447 Pa. Super. 302, 307, 669 A.2d 360, 363 (1995).

The standard of care a landowner or possessor owes to an entrant upon the land depends on whether the entrant is a trespasser, licensee of business invitee. *Trude v. Martin,* 442 Pa. Super. 614, 624, 660 A.2d 626, 630 (1995) (citing *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983)). The duty owed to the business invitee is the highest standard of care. An invitee is someone who is "invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Restatement (Second) of Torts §332 (1965). People who enter bars are "business patrons and must be considered invitees . . . [t]he person in control of the property is liable to such an invitee if he should have known that the invitee would reasonably believe that his presence is permitted or desired." *Trude,* 442 Pa. Super. at 626, 660 A.2d at 631-32 (quoting *Portee v. Kronzek,* 194 Pa. Super. 193, 166 A.2d 328 (1960)).

In this case, Rosa was obviously a business invitee. There was no evidence presented to contradict the fact that Uncles, as a bar and not a private club, did not invite all members of the public. Thus, according to Pennsylvania case law, Rosa, as a bar patron, was a business invitee to which Uncles owed a duty of care.

### 2. Uncles Had a Duty To Protect Rosa and All Other Bar Patrons From Any Dangerous Acts or Conditions of Which the Owner Has Actual or Constructive Notice

The duty owed to bar patrons, as business invitees, is set out in Restatement section 343, which dictates a landowner will be liable for injuries to an invitee if he:

"(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343 (1965) quoted in *Summers,* 743 A.2d at 506. This section requires store or bar owners to have actual or constructive notice that a potentially dangerous condition exists. *Zito v. Merit Outlet Stores,* 436 Pa. Super. 213, 217, 647 A.2d 573, 575 (1994) (citing *Moultrey v. Great A. & P. Tea Co.,* 281 Pa. Super. 525, 422 A.2d 593 (1980)).

An invitee must show that a proprietor deviated from the duty of reasonable care that it owed under the particular circumstances. *Neve v. Insalaco's,* 2001 WL 220194, *3 (Pa. Super.). This means the invitee has to prove the landowner knew or should have known through reasonable care that a harmful condition existed. *Id.* (citing *Zito* at 217, 647 A.2d at 574-75). What constitutes this type of constructive notice depends on the circumstances of each case. *Neve* at *3. One of the most important factors to be considered is the time which has elapsed between the origin of the dangerous condition and the accident or incident. *Id.* The relative durability of a defect is also an important and related factor to be considered in such a determination.[1] *Id.* If a de-

---

1. The court in *Neve* noted that spilt soup on the floor is too transitory to charge a defendant with constructive notice. However, a raised metal strip on a stair, upon which a patron tripped could have existed

fect is inherently durable, there is a lower standard of how much proof must be offered as to how long the problem existed in order to charge the landowner with constructive notice. *Id.*

When a dangerous condition exists, the question for the finder of fact is whether or not the landowner had a duty to warn the injured party. *Zito* at 217, 647 A.2d at 575. An invitee is usually responsible to observe only that which can be seen. *Id.* Even if a danger is obvious or apparent to an invitee, a possessor of land still should warn if he "has a reason to expect danger because to a reasonable man in his position, the advantages of doing so would outweigh the risk" of harm to the invitee. *Id.* (quoting Restatement (Second) of Torts §343(A)(1), comment f). Furthermore, in section 344 of the Restatement, there is a duty to police on the premises. Restatement (Second) of Torts §344, comment r. According to section 344, owners of land held open to the public for use are liable for accidental, negligent or intentionally harmful acts of third persons. Restatement (Second) of Torts §344 comment f, cited in *Feld v. Merriam,* 506 Pa. 383, 391, 485 A.2d 742, 745 (1984). This provision was specifically adopted by the Supreme Court of Pennsylvania. *Moran v. Valley Forge Drive-In Theater Inc.* 431 Pa. 432, 246 A.2d 875 (1968). "One who invites all may reasonably expect that all might not

---

long enough to form constructive notice, if a witness saw the defect immediately after the incident. *Neve,* 2001 WL 220194 at *3 (citing *Rogers v. Horn & Hardart Baking Co.,* 183 Pa. Super. 83, 86, 127 A.2d 762, 764 (1956); *Hartigan v. Clark,* 401 Pa. 594, 165 A.2d 647, 652 (1960).

behave, and bears the responsibility for injury that follows the absence of reasonable precaution against that common expectation." *Feld,* 506 Pa. at 391, 485 A.2d at 745.

Section 344 states that a land possessor who knows from past conduct that there is a likelihood the conduct of third parties may endanger the invitees, may be under a duty to take precautions against such harm. This is especially applicable where a possessor may anticipate criminal or careless conduct by third persons. This duty includes providing "a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts §344, comment r, quoted in *Roski v. Halfway House Inc.,* 396 Pa. Super. 562, 571, 579 A.2d 392, 397 (1990) (Johnson, J., dissenting) (affirming by majority the imposition of liability on tavern owner for injuries to patron shot in elbow during the course of a robbery). It is the duty of a bar owner to keep the bar reasonably well policed. *Id.* The duty is not necessarily fulfilled by instruction to the bartender especially where the owner has "reason to believe that more protection is necessary." *Id.* (citing *Howard v. Zaney Bar,* 369 Pa. 155, 85 A.2d 401 (1952)).

In this case, Uncles was holding its establishment out to the public. Only one year prior to the attack on Rosa, another invitee of the bar robbed and shot one of the bartenders. Uncles was on constructive notice that a robbery could occur on its premises. This was not a transitory condition if no additional precautions were effectively taken. In addition, serving alcohol to members of the public and failing to properly supervise them

was a risk taken by Uncles. Uncles claimed that it installed the video cameras to protect its invitees. However, the monitoring of the video cameras installed by Uncles was lax at best, and nonexistent when Wernick was absent from the bar. If a crime occurred, it would not have been observed by Uncles until days or weeks later when the tapes were reviewed. Such a monitoring procedure is not preventative nor protective. There were no bouncers nor any security devices placed at the entrance to a bar where an armed robbery had taken place. Uncles had a reason to believe more protection than one bartender was necessary. However, the bar was not reasonably policed, and at times, not policed at all. Uncles breached the duty it had to protect its patrons, and what resulted was the attack on Rosa. The injuries to Rosa were a direct and proximate result of Uncles' failure to protect and/or warn the bar patrons of the potential danger that existed within the establishment.

### C. *Uncles Was Properly Held Liable for Rosa's Injuries Because Its Negligence Was Proven*

### 1. All of the Elements Necessary To Prove a Case in Negligence Were Proven in the Case Against Uncles

The elements required to prove a prima facie case of negligence have been enumerated by Pennsylvania courts repeatedly. To establish a case of negligence, a plaintiff must set forth and prove (1) that he was owed a duty of care; (2) that duty was breached; (3) that breach proximately caused harm to the plaintiff; and (4) the plaintiff suffered actual damages. *Summers,* 743 A.2d

at 506 (citing *Ellis v. Sherman,* 512 Pa. 14, 18, 515 A.2d 1327, 1328 (1986)).

The above discussion describes in detail that Uncles had an affirmative duty to protect Rosa from harm that it should have anticipated. That duty was breached when Rosa was harmed by another patron of Uncles. The lack of protection was a substantial factor in bringing about the attack on Rosa. Rosa suffered physical and psychological damages as a result of Uncles negligence, to which he credibly testified to this court. Plaintiff Rosa not only set forth, but proved a case of negligence by Uncles, and therefore, Uncles properly has been held jointly and severally liable for the injuries to Rosa.

## 2. Uncles Negligence Was a Substantial Factor in Causing Rosa's Injuries

The courts of Pennsylvania have adopted the approach to legal causation that is described as the "substantial factor" approach. *Trude,* 442 Pa. Super. at 628, 660 A.2d at 663 (citing Restatement (Second) of Torts §431(a) (1965)). If a plaintiff proves a defendant's negligence was a substantial factor in causing the plaintiff harm, that defendant may be held liable for the full amount of the plaintiff's damages. *Id.* In situations where more than one substantial factor brings about harm, the principle of concurrent causes applies. *Trude,* 442 Pa. Super. at 628, 660 A.2d at 632 (citing *Monzo v. PennDOT,* 124 Pa. Commw. 360, 556 A.2d 493 (1989)). Obviously, failure to protect is a significantly sufficient factor in harm inflicted upon a patron. Since Uncles was determined to be negligent in breaching its duty to Rosa,

Uncles may be held liable for all of Rosa's injuries and therefore liable for the full amount of damages awarded to Rosa. This liability applies regardless of the contribution to the assault and Rosa's injuries by Tyrone Clarkson. If Uncles had adequately protected Rosa, Clarkson would not have been able to complete his robbery of Rosa. Hence, the principle of concurrent causes applies and Uncles was properly held jointly and severally liable along with Clarkson, for the full amount of Rosa's damages.

## V. CONCLUSION

Based upon the foregoing, this court properly entered a judgment in favor of Rosa, awarding him damages and holding Uncles and Clarkson jointly and severally liable for the attack that occurred. Therefore, defendant's motion was properly denied and its appeal should be dismissed.