J-A28021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RONALD KELLY AND PATRICE KELLY, AS ASSIGNEES OF BBK TAVERN, INC. D/B/A THE PRINCETON TAVERN, BY AND THROUGH ITS AUTHORIZED REPRESENTATIVE JOHN BELL | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 186 EDA 2024 |
| THE CARMAN CORPORATION | : : : | |
| Appellant | | |

Appeal from the Order Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  130704825

BEFORE:  PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 18, 2025**

In this action for breach of contract, a jury entered a verdict against Appellant, the Carman Corporation ("CC") and in favor of Appellees, Ronald Kelly and Patrice Kelly ("the Kellys"), as assignees of BBK Tavern, Inc. ("BBK"), doing business as The Princeton Tavern, by and through its authorized representative John Bell.  The trial court denied CC's post-trial motions and awarded delay damages to the Kellys.  The Kellys entered judgment against CC in the amount of $7,577,727.52, and CC filed this timely appeal.  We vacate the judgment and remand for a new trial limited to the amount of the Kellys' damages, the fourth trial in these protracted proceedings.

The record demonstrates that on May 23, 2007, Ronald Kelly suffered serious injuries in a motor vehicle accident when his car was struck by a vehicle operated by Michael Siuma, who was driving under the influence of alcohol. In 2009, the Kellys filed a personal injury action in the Court of Common Pleas of Philadelphia County ("trial court") alleging that Mr. Siuma consumed alcohol at the Princeton Tavern prior to the accident and was served alcohol after he was visibly intoxicated. The "Princeton Tavern" is a trade name for BBK. The Kellys' complaint included negligence claims against Mr. Siuma concerning his operation of the vehicle, negligent entrustment claims against Marie Siuma (the vehicle owner), and claims under Pennsylvania's Dram Shop Act against BBK and other defendants.

In 2007, the same year as the accident, John Bell, BBK's manager, approached CC, an insurance broker, to obtain insurance for BBK. In 2009, shortly after the Kellys filed their personal injury action, Bell made CC aware of the claims against BBK. Bell also mentioned the claims to attorney David Lehman, who was doing tax work for BBK at the time. Bell asked Lehman to contact CC to make sure that everything was okay. Lehman called CC and spoke to CC's employee, Sherry Sapienza, who assured Lehman that CC was in receipt of the complaint against BBK. Lehman informed Bell of this conversation, so Bell was under the impression that everything was all right and that the insurance would cover BBK's liability.

BBK and several other defendants failed to answer the complaint. On August 4, 2010, counsel for the Kellys served BBK and the other non-

answering defendants with a ten-day notice of intent to enter a default judgment. On August 25, 2010, the Kellys entered a default judgment against BBK and the other defendants.

On September 15, 2010, CC forwarded the Kellys' complaint to RCA Insurance Group, the third-party administrator of BBK's insurance policy for State National Insurance Company, Inc ("SNIC"). On September 23, 2010, RCA reviewed the docket and discovered the default judgment entered against BBK. On October 8, 2010, BBK filed a petition to open judgment in which it denied serving alcohol to Mr. Siuma while he was visibly intoxicated. On December 9, 2010, the trial court denied BBK's petition to open.

On January 19, 2011, SNIC commenced a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania ("federal court") claiming that it had no duty to defend or indemnify BBK in the Dram Shop action.

On November 3, 2011, this Court affirmed the trial court's order denying BBK's petition to open judgment. On March 12, 2012, our Supreme Court denied BBK's petition for allowance of appeal.

On September 18, 2012, the federal court entered an order declaring that SNIC had no duty to defend or indemnify BBK in the Dram Shop action.

In November 2012, a damages hearing took place in the trial court before the Honorable Sandra Mazer Moss concerning a stipulated judgment in the Dram Shop action. On January 10, 2013, the Kellys stipulated with BBK to enter judgment against BBK in the amount of $5,000,000.00. On January

17, 2013, the trial court approved the stipulation and entered judgment against BBK in the stipulated amount. BBK thereupon assigned its rights against CC to the Kellys. The assignment agreement between the Kellys and BBK provided, *inter alia*, that (1) BBK would cooperate fully in any litigation against CC; (2) the judgment against BBK would not be marked satisfied until after the end of all litigation with CC, whether by final judgment, exhaustion of appeals, or settlement; and (3) the Kellys would not attempt to collect the judgment against BBK by demanding or requiring payment from BBK or executing against BBK's assets.

In 2013, standing in BBK's shoes, the Kellys began the present action by filing a complaint against CC, Sergius Carman (an individual) and other defendants[1] alleging claims of negligence and breach of contract. The breach of contract claim asserted that CC breached its oral agreement to obtain insurance for BBK, and this breach enabled SNIC to deny defending or indemnifying BBK in the Kellys' underlying action.

On August 1, 2016, the case proceeded to trial before the Honorable Kenneth Powell. The Kellys argued that the jury should only decide the issue of liability, because there was a previous stipulation of damages in the amount of $5,000,000.00. Judge Powell disagreed and prohibited any mention of stipulated damages. On August 2, 2016, however, Judge Powell declared a mistrial.

_____

[1] The other defendants were later dismissed from the case.

- 4 -

In February 2018, a second trial took place before the Honorable Theresa Sarmina. Judge Sarmina ruled that the $5,000,000.00 judgment could not be mentioned during opening statements, and that she would give the issue more attention later. The jury found CC and Sergius Carman negligent and found that their negligence was the factual cause of harm to BBK. Jury Verdict Slip, 2/16/18, at 1-2. The jury further found that CC breached its contract with BBK, and that its breach was a cause of harm to BBK. *Id.* at 3. The jury did not return an award of damages. *Id.* (question of amount of damages absent from verdict slip).

Both sides filed post-trial motions. On June 25, 2018, Judge Sarmina granted judgment n.o.v. to CC on the negligence claim because this claim was time-barred. Judge Sarmina denied CC's motion for judgment n.o.v. on the contract and ordered a new trial on the contract claim limited to determination of the amount of the Kellys' damages. Both sides appealed to this Court.

In this Court, CC argued, *inter alia*, that Judge Sarmina erred by failing to grant judgment n.o.v. to CC on the contract claim due to the Kellys' failure to prove damages. We affirmed Judge Sarmina's order in all respects, citing with approval her opinion concerning damages:

> There was evidence of real damages from this breach of contract in the entry of judgment against BBK. The Kellys, as assignees bringing an action against an assignor's insurance broker, satisfied any requirement to prove real damages with evidence of the stipulated default judgment entered against BBK. While the rulings of a prior judge ... prevented the Kellys from putting evidence or testimony of the amount of the $5,000,000 (five-million dollar) stipulated default judgment before the jury, the

Kellys have made a record of damages. The Kellys' expert, Barbara Sciotti, testified that BBK suffered a default judgment in the Dram Shop action. The Kellys established that this default judgment resulted from CC's breach of contract. Thus, there was a sufficient basis for an inference of real, actual damages. At the post-trial stage, the trial court ordered a new trial, only as to damages, to allow the Kellys to prove their amount of damages and to allow CC to challenge the Kellys' proof.

*Kelly v. Carman Corporation*, 229 A.3d 634, 655 (Pa. Super. 2019) (citing Trial Court Opinion, 5/8/19, at 17) (cleaned up). Accordingly, we remanded this case for a third trial limited to "determin[ation of] the amount of damages to be awarded for the sole remaining claim of breach of contract by CC only." *Id.* at 639.

Prior to the third trial, the Kellys filed a "Motion *In Limine* To Define The Sole Issue For The Jury At Trial" requesting an order that "the sole issue for the jury to determine at trial is the amount of personal injury damages suffered by [the Kellys in the 2007] motor vehicle accident." Motion *in Limine*, 5/3/23, at 7. CC filed a response opposing the motion *in limine* on the ground that the damages suffered by the Kellys was not the correct measure of damages. Instead, CC said, the correct measure of damages was the damages suffered by BBK as a result of CC's breach of contract, "[The Kellys] are not asserting their own claims against [CC] (because they have none). Rather, [the Kellys] are standing in the shoes of BBK and asserting BBK's rights to any damages that were caused by [CC's] breach of a contract between [CC] and BBK." Response to Motion In Limine, 5/8/23, at 1-2.

Shortly before the third trial began, the Honorable Charles Cunningham granted the Kellys' motion *in limine* and added, "Consistent with this order, the sole issue for the jury to determine at trial is the amount of personal injury damages suffered by [the Kellys], arising out of the May 23, 2007 motor vehicle accident and the jury's verdict will be entered as a judgment against [CC]." Order, 5/22/23 (docketed 5/23/23).

In May 2023, a third trial took place before Judge Cunningham. On May 23, 2023, the jury returned a verdict of $5,600,000.00 in favor of the Kellys on the contract claim. The verdict slip stated that the jury awarded $4,600,000.00 for damages suffered by Ronald Kelly in the motor vehicle accident and $1,000,000.00 for Patrice Kelly's loss of consortium.

On May 26, 2023, the Kellys filed a motion for delay damages. On June 2, 2023, CC filed post-trial motions, claiming, *inter alia*, that Judge Cunningham erred in granting the Kellys' motion *in limine*. CC's Motion For Post-Trial Relief, 6/2/23, at ¶ 25 ("This Court erred in granted the Kellys' [motion *in limine*] because this Court and the Superior Court had previously held that Carman was entitled to 'litigate the issue of damages,' and not merely 'the amount of personal injury damages' caused by a car crash that did not involve Carman. Indeed, to this day no judge or jury has ever found that Carman's breach of the oral contract with BBK – in whose shoes the Kellys stand – rendered Carman liable for the Kellys' personal injuries").

Attached to CC's post-trial motions was a notice that CC had ordered the notes of testimony from trial. On June 4, 2023, the court reporter sent an email that notes of testimony would be complete by the end of the week. Although this email is in CC's reproduced record, it is not in the certified record. Pursuant to Pa.R.A.P. 1926(b)(1), we include the June 4, 2023, email in the certified record. *See id.* (appellate court, on its own initiative, may correct omission in certified record).

On November 30, 2023, Judge Cunningham denied CC's post-trial motions and granted delay damages to the Kellys in the amount of $1,977,727.52. During the nearly six months between the court reporter's June 4, 2023, email and the denial of post-trial motions on November 30, 2023, there is no indication that CC's counsel made further attempts to obtain the trial notes of testimony.

On December 14, 2023, the Kellys filed a praecipe for entry of judgment in the amount of $7,577,727.52. On December 31, 2023, Judge Cunningham retired from the bench.

On January 2, 2024, CC filed a notice of appeal to this Court. On the same date, CC filed a request for the trial transcript that stated, "[CC's] counsel previously submitted a Request for Transcript on May 30, 2023, a copy of which is Exhibit A hereto. [CC's] counsel has not yet received a copy of the transcripts."

Due to Judge Cunningham's retirement, the Honorable Daniel Anders was assigned to this case. On February 12, 2024, without first ordering CC to file a concise statement of matters complained of on appeal, Judge Anders filed a Pa.R.A.P. 1925(a) opinion recommending that this Court affirm the judgment. Judge Anders opined that CC waived all issues on appeal by failing to obtain the trial transcript. Opinion, 2/12,24, at 5-6. Judge Anders noted:

> [CC] attached a notice to [its] post-trial motion indicating that the transcript had been requested. Court staff contacted the Court Reporting, Digital Recordings, and Interpreter Administration and was told there is no record that [CC] requested the transcript. [CC] was also unable to provide proof of the transcript request when asked by Judge Cunningham during oral argument on the post-trial motion, according to the recollection of Court staff present at the argument.[2]

*Id.* at 6 n.2. Judge Anders went on to address the issues that he "felt equipped to address absent a transcript below," *id.* at 6, but he held that these issues lacked merit. *Id.* at 6-10.

In April 2024, months after Judge Anders' opinion, CC obtained the notes of testimony. CC included the notes in its reproduced record in this appeal. The prothonotary, however, did not include the transcript in the official record of this case. Pursuant to Pa.R.A.P. 1926(b)(1), we include the transcript in the certified record.

CC raises five issues in this appeal:

_____

[2] Other than Judge Anders' mention of oral argument, we see nothing in the record to indicate that oral argument took place. Nor is there a transcript of oral argument in the certified record.

- 9 -

1. Whether the Lower Court erred when it eliminated [the Kellys'] burden [in their capacity as BBK's assignees] to prove that [CC's] breach of contract with BBK [] caused the damages that the Kellys suffered in a car crash that did not involve [CC].

2. Whether the Lower Court erred when it did not allow [CC] to introduce evidence that BBK [] suffered no monetary damages as a result of [CC]'s breach of contract.

3. Whether the Lower Court erred in not allowing [CC] to introduce into evidence the relevant insurance policy [CC] procured for BBK[]?

4. Whether the Lower Court erred when Judge Cunningham, *inter alia*, asked [the Kellys'] counsel in front of the jury to "explain to the jury what's being obfuscated by the Defense?"

5. Whether the Lower Court erred in awarding the Kellys delay damages.

CC's Opening Brief at 5-6.

Relying on Judge Anders' opinion, the Kellys assert in their brief that CC waived all issues on appeal by failing to obtain the trial transcript. Alternatively, the Kellys maintain that none of CC's arguments warrant relief.

We focus on the first two arguments in CC's brief, since we find them dispositive. These arguments, read together with CC's factual history of the case,[3] assert that Judge Cunningham erred by granting the Kellys' motion *in limine* and limiting evidence of damages to the personal injuries suffered by the Kellys in the motor vehicle accident. We hold that CC preserved these arguments for appeal despite failing to obtain the notes of testimony until

_____

[3] *See* CC's Opening Brief at 13-14 (describing the Kellys' motion *in limine* and Judge Cunningham's ruling on this motion).

- 10 -

months after taking this appeal. We further conclude that Judge Cunningham erred by limiting evidence of damages to the Kellys' personal injury damages.

The purpose of post-trial motions is to "ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources." **Dilliplaine v. Lehigh Valley Trust Co.**, 322 A.2d 114, 116 (Pa. 1974). During the post-trial motion stage, it normally is essential for the moving party to obtain the trial transcript to facilitate meaningful review of the moving party's claims of error. Thus, failure to obtain the transcript can often result in waiver of the moving party's claims of error. **See Williams v. Penn Center for Rehabilitation and Care**, 147 A.3d 590, 593 (Pa. Super. 2016) (citing **Roski v. Halfway House, Inc.**, 579 A.2d 392, 394 (Pa. Super. 1990)).

Here, however, CC did not waive its objection to Judge Cunningham's decision on the motion *in limine* by failing to obtain the trial transcript during post-trial proceedings. Prior to the third trial, the Kellys filed a motion *in limine* to limit "the sole issue for the jury to determine at trial . . . [to] the amount of personal injury damages suffered by [the Kellys in the 2007] motor vehicle accident." Motion *In Limine* at 7. Over CC's objection, Judge Cunningham entered an order granting the Kellys' motion. Following trial, CC filed post-trial motions objecting to Judge Cunningham's order, but CC's counsel failed to obtain the trial transcript. While counsel's omission was not

good practice, there still was enough in the record without the transcript for Judge Cunningham to review this issue, because the record included:

**(1)** this Court's 2019 opinion;

**(2)** the Kellys' motion *in limine*;

**(3)** CC's response in opposition to the Kellys' motion;

**(4)** Judge Cunningham's pretrial order granting the motion;

**(5)** the verdict slip awarding Ronald Kelly $4.6 million for damages suffered in the motor vehicle accident and Patrice Kelly $1 million for loss of consortium, thus establishing that Judge Cunningham limited trial to the Kellys' personal injury damages, consistent with his pretrial order; and

**(6)** CC's post-trial motions.

Moreover, because Judge Cunningham ruled on the motion *in limine* prior to trial, it was not necessary for CC to renew its objection to the motion during trial to preserve it for post-trial motions and appeal. **See** Pa.R.E. 103(b) ("[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal"). As a result, it was not necessary for Judge Cunningham to obtain the trial transcript to determine whether CC preserved its objection for appeal.

We conclude that Judge Cunningham erred in granting the Kellys' motion *in limine* because his order allowed the jury to apply the wrong measure of damages.

The Kellys were assignees of BBK's claims against CC. "An assignment is a transfer of property or a right from one person [or entity]to another; unless qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *In Re Jones*, 305 A.3d 28, 36 (Pa. Super. 2023). As assignees, the Kellys stood in BBK's shoes at the time of the third trial. *See MB Financial Bank v. Rao*, 239 A.3d 181, 186 (Pa. Super. 2020) ("[w]here an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights"). BBK's assignment to the Kellys, however, did not give the Kellys greater rights than those that BBK possessed. *Jones*, 305 A.3d at 36 ("an assignment does not confer on the assignee any greater rights than those possessed by the assignor"). As assignees of BBK's rights, the Kellys were limited to the damages suffered by **BBK**. Judge Cunningham's order erroneously restricted the jury's review to the amount of damages suffered by **the Kellys** in the motor vehicle accident. Judge Cunningham should have directed the jury to determine the amount of damages suffered by **BBK**. Accordingly, we must remand this case for a fourth trial limited to the determination of the damages suffered by BBK for CC's breach of contract.

The question becomes whether the Kellys' stipulation with BBK on the amount of damages is relevant to the determination of BBK's damages on remand. We hold that it is relevant and that the jury should examine it under the standards prescribed below.

The briefs in this case do not address this question; nor are we aware of any precedent directly on point. We find, however, that our Supreme Court's reasoning in an analogous case, ***The Babcock & Wilcox Co. v. Am. Nuclear Insurers***, 635 Pa. 1, 131 A.3d 445 (2015), provides guidance on this subject.

In ***Babcock***, the insureds, operators of nuclear facilities, were sued by hundreds of claimants alleging that they suffered bodily injury and property damage from radioactive or toxic materials released from the facilities. The insureds sought coverage for the suits, and their insurers agreed to defend them subject to a reservation of rights. Over the insurers' objection, the insureds ultimately settled the outstanding claims for $80,000,000.00 (within the policy limits of $320,000,000.00). The insurers refused to fund the settlement, maintaining that the insureds breached the policies' cooperation clause by settling without the insurers' consent. A jury found that the insureds' settlement with the claimants was fair and reasonable. The trial court then molded the verdict to include prejudgment and post-verdict interest.

On appeal, our Supreme Court framed the issue as "[what] the appropriate standard [was] in determining whether an insurer is liable under its insurance policy for a settlement made by its insured without securing the insurer's consent, when the insurer is defending the claim subject to a reservation of rights." ***Id.***, 131 A.3d at 456. The court held that the insureds

could recover from their insurers provided that the settlement was "fair, reasonable and non-collusive" regardless of whether the insureds obtained the insurers' consent as required by the policies and regardless of whether the insureds failed to show that the insurers acted in bad faith. *Id.* at 462. The "fair and reasonable" standard was "limited to those cases where an insured accepts a settlement offer after an insurer breaches its duty by refusing a fair and reasonable settlement while maintaining its reservation of rights and, thus, subjects an insured to potential responsibility for the judgment in a case." *Id.* The determination of whether the settlement is fair and reasonable "necessarily entails consideration of the terms of the settlement, the strength of the insured's defense against the asserted claims, and whether there is any evidence of fraud or collusion on the part of the insured." *Id.* The court stated that reasonableness would be determined from whether the settlement was "fair and reasonable from the perspective of a reasonably prudent person in the same position of [the insureds] and in light of the totality of the circumstances." *Id.* at 463. The court expressly noted that an insurer's liability for breaching the duty to settle would be limited to policy limits, and that an insurer could not be liable for extra-contractual liability absent bad faith. *Id.* at 462-63. Applying these standards, the court held that the settlement between the insureds and claimants was fair and reasonable in view of the strength of the underlying action and amount of the settlement offer. *Id.* at 463.

- 15 -

The present case is analogous to **Babcock**. Like the insureds in **Babcock**, BBK sought insurance coverage for the Kellys' personal injury action. In **Babcock**, the insurers refused to pay the plaintiffs' claims, prompting the insureds to settle the claims within policy limits and sue the insurers. Analogously, in the present case, CC failed to request coverage for BBK, so the Kellys (1) entered a stipulation with BBK as to the amount of damages, (2) entered judgment against BBK in this amount with court approval, (3) obtained an assignment from BBK of its right to proceed against CC, and (4) sued CC.

**Babcock** held that the proper standard for the jury to apply was whether the settlement between the insureds and the claimants was fair, reasonable and non-collusive. Given the similarities between **Babcock** and the present case, the same standard should apply here on remand. The purpose of remand is for the jury to decide the amount of damages (if any) to award to the Kellys, standing in the shoes of BBK. To reach its decision, the jury should consider whether the stipulation on damages between the Kellys and BBK was fair and reasonable under the totality of the circumstances. This test may entail consideration, *inter alia,* of (1) the severity of the Kellys' injuries, (2) the terms of the stipulation, including the amount, (3) the strength of BBK's defense against the Kellys' claims, and (4) whether the Kellys and BBK reached this stipulation through fraud or collusion.

On remand, an award of damages to the Kellys (if any) should not exceed the amount of the stipulation between the Kellys and BBK. The Kellys stipulated with BBK that their damages were $5,000,000.00, entered a judgment against BBK in this amount, and obtained an assignment from BBK. Since the judgment against BBK is $5,000,000.00, any verdict against CC should also be limited to $5,000,000.00 because the Kellys now stand in BBK's shoes as assignees.[4]  **See MB Financial Bank**, 239 A.3d at 186 (where assignment is effective, assignee stands in assignor's shoes and assumes all of his rights"); **see also Osial v. Cook**, 803 A.2d 209, 216 (Pa. Super. 2002) ("[a] valid stipulation must be enforced according to its terms").

In the event of a monetary verdict against CC, the Kellys may request the court to mold the verdict by adding prejudgment and post-verdict interest. **See Babcock**, 131 A.3d at 449 (trial court molded verdict to include such interest).[5]

_____

[4] We do not foreclose the jury from entering a verdict less than $5,000,000.00.

[5] Following the third trial in this case, the Kellys filed a motion for delay damages, which Judge Cunningham granted. Because trial was limited to the Kellys' claim for breach of contract, the proper procedure would have been for the Kellys to move for addition of prejudgment and post-verdict interest. **See**, **e.g.**, **Riverview Carpet & Flooring, Inc. v. Presbyterian Senior Care**, 299 A.3d 937, 966-71 (Pa. Super. 2023) (defining standards for awarding prejudgment interest for breach of contract). Motions for delay damages are only available in tort actions for monetary relief in bodily injury, death or property damage cases. Pa.R.Civ.P. 238(a)(1).

Judgment vacated. Case remanded for new trial in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2025