**[J-86-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| THE BABCOCK & WILCOX COMPANY AND B&W NUCLEAR ENVIRONMENTAL SERVICES, INC. | : No. 2 WAP 2014 |
| | : |
| | : Appeal from the Order of the Superior |
| | : Court entered July 10, 2013 at No. 525 |
| | : WDA 2012, vacating the Judgment of the |
| v. | : Court of Common Pleas of Allegheny |
| | : County entered February 17, 2012 at |
| | : GD99-11498 and GD99-16227 and |
| AMERICAN NUCLEAR INSURERS AND MUTUAL ATOMIC ENERGY LIABILITY UNDERWRITERS AND OTHER INTERESTED PARTY:  ATLANTIC RICHFIELD COMPANY | : remanding. |
| | : |
| | : ARGUED:  October 7, 2014 |
| | : |
| | : |
| | : |
| AMERICAN NUCLEAR INSURERS AND MUTUAL ATOMIC ENERGY LIABILITY UNDERWRITERS | : |
| | : |
| | : |
| | : |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| THE BABCOCK & WILCOX COMPANY AND B&W NUCLEAR ENVIRONMENTAL SERVICES, INC., AND ATLANTIC RICHFIELD COMPANY | : |
| | : |
| | : |
| | : |
| | : |
| APPEAL OF:  BABCOCK & WILCOX POWER GENERATION GROUP, INC. (F/K/A THE BABCOCK & WILCOX COMPANY) AND BABCOCK & WILCOX TECHNICAL SERVICES GROUP, INC. (F/K/A B&W NUCLEAR ENVIRONMENTAL SERVICES, INC.), AND ATLANTIC RICHFIELD COMPANY | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |

MR. JUSTICE BAER                                      DECIDED: July 21, 2015

We granted review to consider an issue of first impression regarding whether an insured forfeits insurance coverage by settling a tort claim without the consent of its insurer, when the insurer defends the insured subject to a reservation of rights, asserting that the claims may not be covered by the policy.  After review, we reverse the decision of the Superior Court and reinstate the judgment of the trial court.

The case history spans two decades, beginning with the 1994 filing of a federal class action lawsuit against Appellant-Insureds Babcock & Wilcox Company (B&W) and Atlantic Richfield Company (ARCO) (collectively, Insureds) brought by plaintiffs claiming to have suffered bodily injury and property damage caused by emissions from nuclear facilities owned by Insureds.[1]  Over time, the class action grew to include over 500 named plaintiffs, who lived near the nuclear facilities.  Insureds denied that the facilities released any emissions or that the harm suffered by plaintiffs resulted from the facilities.  Nevertheless, a 1998 jury trial of eight test cases resulted in an initial verdict totaling over $36 million or approximately $4.5 million per plaintiff.  The federal court, however, granted a new trial due to evidentiary issues.  The retrial was never held given the subsequent settlement discussed below.

While the underlying tort action was pending in federal court, disputes arose between Insureds and their insurers, Appellees American Nuclear Insurers and Mutual Atomic Energy Liability Underwriters (collectively ANI or Insurer).  At the outset of the litigation, Insurer acknowledged that it would defend Insureds but contested whether the policy covered aspects of the claims, and thus defended subject to a reservation of

---

[1]     The Superior Court's decision below provides a fuller discussion of the facts. Babcock & Wilcox Co. v. American Nuclear Insurers, 76 A.3d 1, 3-5 (Pa. Super. 2013).

rights. Specifically, in 1994, Insurer, *inter alia*, asserted that the policy did not cover damages that were not caused by nuclear energy hazard, damages in excess of the policy limits, and claims for injunctive relief and punitive damages. Letter of June 20, 1994, R.R. at 148a-151a. The 1994 reservation of rights was supplemented as to B&W in October 1999, by a letter indicating, *inter alia*, that Insurer reserved its right to disclaim coverage for Insureds' liability based upon Insureds' pressuring of Insurer to settle, which Insurer viewed, in connection with other actions, as a breach of Insureds' duty to cooperate.[2] Letter of October 5, 1999, R.R. at 3206-08.

While the details are not relevant to the current dispute, Insurer filed a declaratory judgment action in state court days after the 1999 reservation of rights letter, raising challenges relating to the coverage limit, whether B&W and ARCO were entitled to separate representation, and bad faith and breach of contract allegations, including the breach of the duty to cooperate, against the Insureds. The Insureds counter claimed, raising bad faith allegations against Insurer. While staying various claims for future determination, including the breach of the duty to cooperate claim, the court decided issues regarding the trigger of coverage and held that B&W and ARCO were entitled to separate counsel. The Superior Court affirmed on appeal, and this Court denied allocatur.[3]

---

[2]    The Insureds' contractual duty to cooperate is set forth in Condition 6 of the contract, see infra at 4.

[3]    During this period of time, Insured B&W filed for bankruptcy, with proceedings spanning 2000-2007.
       Notably, Insurer did not withdraw its reservation of rights, although some aspects of the reservation of rights were mooted by intervening events. Indeed, Insurer reasserted its allegation that Insureds had not complied with their duty to cooperate in 2008. Letter of September 19, 2008, R.R. at 3385; Letter of Oct. 3, 2008, R.R. at 3397.

During the course of the litigation, Insurer refused consent to any settlement offers presented to it due to its conclusion that the case had a strong likelihood of a defense verdict given the lack of medical and scientific support for plaintiffs' claims and decisions by the federal trial court regarding procedural and evidentiary issues in the pending retrial, which Insurer viewed as highly favorable to Insureds' ultimate outcome. Nevertheless, after presenting the settlement offers to Insurer and being denied consent, Insureds ARCO and B&W, respectively in 2008 and 2009, settled with the class action plaintiffs for a total of $80 million, which was substantially less than the $320 million of potential coverage.[4]

Insureds then sought reimbursement of the settlement amount from Insurer in the Allegheny County Court of Common Pleas. Insurer countered that reimbursement was not permissible because the insurance contract contained a standard consent to settlement clause, also referred to as a cooperation clause, requiring Insureds to cooperate with Insurer and to obtain Insurer's consent to settle:

> Assistance and cooperation of the Insured. The insured shall cooperate with the companies, and upon the companies' request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, make any payments, assume any obligations or incur any expense.

Insurance Agreement, Condition 6, Reproduced Record (R.R.) at 59a. Under the insurance policy the decision to settle rested exclusively with Insurer which "may make

---

[4]    Notably, the policy provided that the policy limits were inclusive of defense costs, such that expenditures on defense reduced the coverage available for liability. Insurer expended $40 million defending Insureds prior to the settlement, apparently leaving $280 million in coverage.

such investigation, negotiations and settlement of any claim or suit as they deem expedient." Id. at I(A)(1), R.R. at 57a. Moreover, the policy expressly did not cover "liability assumed by the insured under contract . . . ." Id. at Exclusion (c), R.R. at 58a.

Relevant to the question at bar, the trial court recognized that the case presented the issue of "under what circumstances will a court require an insurance company, whose policy is found to provide coverage, to reimburse an insured that settled the underlying litigation over the objections of the insurance company" in a case involving a standard consent to settlement clause when the insurer has defended its insured subject to a reservation of rights. Tr. Ct. Op., July 5, 2011 at 2. As discussed in more detail below, Insureds asserted that Insurer should reimburse Insureds for the settlement so long as coverage applies and the settlement is fair and reasonable and entered in good faith, a test derived in part from the seminal case of United Services Auto. Ass'n v. Morris, 741 P.2d 246 (Ariz. 1987) (hereinafter "Morris fair and reasonable standard"). Insurer, in contrast, argued that the obligation to pay the settlement could only be imposed on Insurer if it acted in bad faith in refusing to settle, seeking application of this Court's test in Cowden v. Aetna Cas. and Sur. Co., 134 A.2d 223 (Pa. 1957), where we held that an insurer must pay a judgment in excess of policy limits for its bad faith failure to settle below policy limits (herein after "Cowden bad faith standard").[5]

While initially opining in December 2009 that the Cowden bad faith standard should apply, the trial court reconsidered its decision in July 2011 and applied the Morris fair and reasonable standard. Judge R. Stanton Wettick reasoned that while the interests of insurers and insureds generally align when the insurer has accepted

---

[5]    Full discussions of Cowden and Morris are set forth infra at 20 and 23 respectively.

responsibility for defense and indemnity, the parties' interests increasingly diverge the more the insurer believes the policy does not cover the claims, as when the insurer defends under a reservation of rights. He observed that, in a reservation of rights case, an insured would prefer to cap the potential liability as it ultimately may be responsible for the full settlement in the event that insurer is successful in its challenge to coverage, whereas the insurer does not want to settle as it would relinquish its challenge to coverage. Tr. Ct. Op., July 5, 2011 at 5. Relying upon Morris and decisions from other jurisdictions, the trial court opined that a reservation of rights case is more akin to a case where an insurer has refused coverage and defense. Id. at 5-6. Accordingly, the court adopted the test forwarded by Insureds under which an insurer, defending subject to a reservation of rights, is required to reimburse an insured for a settlement reached in violation of the consent to settle clause where coverage is found to exist and the settlement is "fair and reasonable" and made in "good faith and without collusion." Id. at 6-11(citing in support Insurance Co. of North America v. Spangler, 881 F.Supp. 539 (D. Wyo. 1995); Morris, 741 P.2d 246; Kelly v. Iowa Mut. Ins. Co., 620 N.W.2d 637 (Iowa 2000); Patrons Oxford Ins. Co. v. Harris, 905 A.2d 819 (Me. 2006); and Martin v. Johnson, 170 P.3d 1198 (Wash. Ct. App. 2007)); Tr. Ct. Order, July 5, 2011(providing that Insurer shall reimburse Insureds if the Insureds establish that the settlement was "fair and reasonable" unless Insurer establishes that "there is no coverage" under the policies for reasons unrelated to the settlement).[6]

---

[6] The court further observed that unlike some other cases discussed below where the insured merely assigned its rights to the plaintiff and removed itself from any potential liability, the insured in this case paid the settlement with its own funds and was now seeking reimbursement, and thus "had a strong interest to hold out for the best possible deal." Tr. Ct. Op. at 2.

Following the court's decision, a two-week trial was held where a jury determined that Insureds' settlement with plaintiffs was fair and reasonable. The trial court, then, molded the verdict to include prejudgment and post-verdict interest. Insurer appealed to the Superior Court seeking application of the Cowden bad faith standard. The Superior Court recognized that this case presents an issue of first impression in Pennsylvania, which has nonetheless been addressed by various state and federal courts. The court further observed that the question is subject to well-settled basic principles of Pennsylvania insurance law. The court emphasized that insurance policies are contracts at heart, controlled by the language of the policy, but which include unique policy concerns requiring that any ambiguity be interpreted in favor of the insured.

The court reiterated that Pennsylvania distinguishes between the duty to provide coverage and the broader duty to defend, which applies when the claim may potentially come within the coverage of the policy. The panel acknowledged that the insurer's broad duty to defend is balanced by an insurer's option to defend subject to a reservation of rights. It emphasizes that the utilization of the reservation of rights is not a breach of contract but instead is encouraged, as it provides insureds with a defense in all cases of potential coverage while coverage is being determined.

While acknowledging the permissible use of reservation of rights, the Superior Court detailed the potential for a conflict of interest between an insurer defending under a reservation of rights and an insured, who would be subject to full liability if its claim is eventually determined not to be covered. The panel recounted concerns raised in other courts that insurers will be less zealous in defense and less willing to settle if the insurers believe that they will ultimately not be liable for coverage. Acknowledging insureds' interest in settling reservation of rights cases, the Superior Court noted that allowing insureds to settle seemingly violates the clear language of the policy requiring

the insurer's consent to settlement and presents the potential for collusion between an insured and a plaintiff.

The Superior Court categorized judicial responses to these concerns as falling into two broad categories. It contended that a number of courts, like the trial court in this case, follow Morris, 741 P.2d 246, holding that an insurer may be liable to reimburse a settlement that is fair, reasonable, and non-collusive, if coverage is determined to apply. The second category, which is championed by ANI in the case at bar, includes Vincent Soybean & Grain Co., Inc., v. Lloyd's Underwriters of London, 246 F.3d 1129 (8th Cir. 2001), and resembles Pennsylvania's Cowden bad faith standard, although Pennsylvania cases have not applied the standard when the insured has settled absent an insurer's consent. Vincent Soybean and other like cases emphasize that an insured breaches the insurance policy when it settles without the insurer's consent. These cases, therefore, have required the insured to demonstrate that the insurer acted in bad faith in refusing to settle before requiring insurer to pay the settlement. The Superior Court opined "that the Morris and Vincent Soybean approaches tilt the playing field too much in favor of, respectively, the insured or the insurer. There is, however, a third approach, an approach that we believe best balances the interests of the insurer and the insured." Babcock & Wilcox Co. v. American Nuclear Insurers, 76 A.3d 1, 17 (Pa. Super. 2013).

The Superior Court utilized Taylor v. Safeco Insurance Co., 361 So.2d 743 (Fla. Dist. Ct. App. 1978), as exemplifying the third approach, which allows the insured the option of rejecting the insurer's defense (hereinafter the "Taylor/Insured's Choice Test"). The Superior Court summarized its test as follows:

> [W]e hold that, when an insurer tenders a defense subject to a reservation, the insured may choose either of two options. It may accept the defense, in which event it remains

unqualifiedly bound to the terms of the consent to settlement provision of the underlying policy. Should the insured choose this option, the insurer retains full control of the litigation, consistently with the policy's terms. In that event, the insured's sole protection against any injuries arising from the insurer's conduct of the defense lies in the bad faith standard articulated in Cowden.

Alternatively, the insured may decline the insurer's tender of a qualified defense and furnish its own defense, either *pro se* or through independent counsel retained at the insured's expense. In this event, the insured retains full control of its defense, including the option of settling the underlying claim under terms it believes best. Should the insured select this path, and should coverage be found, the insured may recover from the insurer the insured's defense costs and the costs of settlement, to the extent that these costs are deemed fair, reasonable, and non-collusive.

Id. at 22. Applying this test to the case at bar, the court remanded for a new trial on "1) whether [Insureds] in fact rejected [Insurer's] defense; and, if not, 2) whether [Insurer] acted in bad faith in declining to settle" or participate in settlement negotiations. Id.[7]

Notably, the Taylor/Insured's Choice Test approach was not forwarded by either Insurer or Insured, and indeed, both parties vehemently object to the Superior Court's adoption of the test because an insured under Pennsylvania law does not have the option of "rejecting" an insurer's defense as it would constitute a breach of the insurance policy, thereby releasing the insurer from the obligation to provide coverage. See American and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 2 A.3d 526, 545 (Pa. 2009) ("[W]here the claim was potentially covered, Insured would have been at risk of breaching the insurance contract if it had rejected [the insurer's] defense and it was later determined that the claim was covered."). Moreover, the parties observe that most

---

[7]    Judge Olsen dissented to the Superior Court's analysis, concluding that the case was controlled by this Court's prior decision in Cowden.

insureds would be unable to utilize the Taylor/Insured's Choice Test approach as they would not have the funds to allow them to employ an independent defense after rejecting the insurer's defense for which they had paid premiums to obtain. Accordingly, for these reasons, we likewise reject the Superior Court's holding as unworkable under Pennsylvania law and turn to the arguments presented by the parties to determine which approach to adopt.

As noted, we granted review to consider as an issue of first impression whether an insured forfeits the right to insurance coverage when it settles a lawsuit without the insurer's consent, where the insurer has defended the suit subject to a reservation of rights.[8] Insureds advocate adopting the Morris fair and reasonable standard. They contend that when an insurer defends subject to a reservation of rights, an insured must be able to protect itself from the potential of an adverse and uninsured decision in the underlying tort case, if the insurer is ultimately deemed correct in concluding that the policy does not cover the claim. Further, Insureds claim that the insurer in a reservation of rights scenario is "in the attractive position of being able to avoid exposure either because the insured prevails at trial or because the insurer's coverage defense is successfully asserted[.]" Insureds' Brief at 33. Insureds contend that the Morris fair and reasonable standard provides protection for the insured by allowing the insured to

---

[8]    Specifically, we granted review of the following question:

> Does a policy holder forfeit its right to insurance coverage by settling an underlying and covered claim without its insurer's consent, where the insurer is defending subject to a reservation of rights to disclaim coverage, the settlement is at arm's length, is fair and is reasonable, and the insurer has failed to offer any amounts in settlement?

Babcock & Wilcox Co. v. Am. Nuclear Insurers, 84 A.3d 699 (Pa. 2014).

accept settlement, while still preserving the insurer's rights to contest coverage, challenge the fairness and reasonableness of the settlement including whether it resulted from fraud or collusion, and maintain control over other aspects of the defense including the choice of counsel and the defense strategy prior to settlement.

Delving further into the underpinnings of the Morris fair and reasonable standard, Insureds observe that the court in Morris held that an insurer's reservation of rights "narrows the reach of the cooperation clause and permits the insured to take reasonable measures to protect himself against the danger of personal liability." Insureds' Brief at 30 (quoting Morris, 741 P.2d at 252.)  Insureds observe that other courts have adopted similar standards, including Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982), and Patrons Oxford Ins. Co., 905 A.2d 819.  Insureds, however, recognize that contrary authority exists criticizing the Morris fair and reasonable standard, but they argue that those cases, including Vincent Soybean, discussed by the Superior Court, involved factually distinct circumstances, where the insured's lack of cooperation extended beyond merely settling the claim without the insurer's consent and included refusing to inform the insurer about the settlement offer or include insurers in any of the defense.

Insureds insist that the Morris fair and reasonable standard is consistent with Pennsylvania insurance law.  They emphasize that the Morris fair and reasonable standard acknowledges the propriety of an insurer's decision to defend under a reservation of rights, emphasizing that such act in no way breaches the insurer's duties under the insurance policy.  The standard, according to Insureds, recognizes that the insurer's decision to defend under a reservation of rights does not permit the insured to breach the duty to cooperate in the defense, but rather alters the relative duties. Insureds explain their position:

To the contrary, . . . the insured must continue to satisfy its cooperation duties, such as sharing information with its insurer, responding to insurer requests, permitting an insurer to participate in settlement negotiations, and, of course, seeking insurer consent prior to entering settlement. Under the Fair and Reasonable Standard, in one respect, and only one respect, is the insured's "cooperation duty" adjusted in light of the insurer's assertion of its intention to reserve the right to disclaim coverage. And that is, when the insurer has reserved its right to disclaim coverage for a settlement or judgment, the insured is no longer duty-bound to refuse to enter into a fair, reasonable and non-collusive settlement simply because the insurer refuses consent. For, if the insurer is reserving its right to disclaim, thereby placing its insured in the "precarious" position widely noted, then the contours of the insured's duty to cooperate cannot properly be considered to extend so far as to include a duty to forego a fair and reasonable settlement solely because its insurer wishes to force a trial or to permit a forfeiture of coverage simply because the insured proceeds to enter into such a settlement.

Insureds' Brief at 35-36 (emphasis omitted).

In support, Insureds observe that Pennsylvania insurance law "prohibits a mechanistic approach to interpretation of insurance policy conditions." Insureds' Brief at 37 (citing Brakeman v. Potomac Ins. Co., 371 A.2d 193, 196 (Pa. 1977) (requiring an insurer to demonstrate prejudice before deeming the insured to have forfeited its insurance coverage by failing to satisfy the notice requirements of the insurance policy)). Insureds also note this Court's instruction that the "insurer must show that the breach is something more than a mere technical departure from the letter of the [insurance contract. Instead, it must show] that it is a departure that results in a substantial prejudice and injury to its position in the matter." Insureds' Brief at 38 (quoting Paxton Nat. Ins. Co. v. Brickajlik, 522 A.2d 531, 532 (Pa. 1987) (quoting Conroy v. Commercial Cas. Ins. Co., 140 A. 905, 907 (Pa. 1928))) (alterations in brief). Insureds further emphasize the "strong, prevailing public policy in Pennsylvania to

encourage voluntary settlements." Insureds' Brief at 39 (quoting <u>Nationwide Ins. Co. v. Schneider</u>, 960 A.2d 442, 449 (Pa. 2008)). Insureds assert that the <u>Morris</u> fair and reasonable standard protects the insured from forfeiture and promotes settlement in cases where the insured's decision to settle in the face of a reservation of rights defense does not constitute a substantial breach, given that it requires a fair and reasonable settlement.[9]

*Amici Curiae*[10] supporting Insureds note that the <u>Morris</u> fair and reasonable standard provides a corollary to the <u>Cowden</u> bad faith standard, observing that while <u>Cowden</u> involved the grant of damages in excess of policy limits, where an insured abided by an insurer's bad faith refusal to settle, the <u>Morris</u> fair and reasonable standard properly imposes only settlement costs up to the policy limits, where an insured agrees to a fair and reasonable settlement over the insurer's objection, without any need to demonstrate the insurer's bad faith.

In response, Insurer urges this Court to affirm the Superior Court's decision to the extent it calls for the application of the <u>Cowden</u> bad faith standard, while adamantly rejecting the Superior Court majority's adoption of the <u>Taylor</u>/Insured's Choice Test allowing an insured to reject coverage as discussed above.[11] Insurer contends that this

---

[9] Insureds further argue that even if this Court does not adopt the <u>Morris</u> fair and reasonable standard for all cases, it should be applied to this case given the history of Insurer's refusal to provide coverage. Insureds finally assert that they would also succeed in proving that Insurer acted in bad faith in refusing to settle if this Court were to apply <u>Cowden</u> to cases where an insured settled without the consent of the insurer.

[10] *Amici curiae* supporting Insureds in the above stated arguments include: United Policyholders, Dravo Corporation, E.W. Bowman, Inc., Hajoca Corporation, Kennametal, Matthews International, Mine Safety Appliances, Saint Joseph's University, Sylvan Incorporated, and Trumbull Corporation.

[11] As discussed <u>supra</u> at 9-10, all parties reject the application of the <u>Taylor</u>/Insured's Choice Test, which allows an insured to decide whether to reject (continued…)

Court's decision in <u>Cowden</u> applies to cases involving an insurer's refusal to consent to settlement, rejecting the Insureds' suggestion that an insurer's reservation of rights changes the analysis.

The fact that an insurer defends under a reservation of rights should not change the analysis, according to Insurer. It observes that, under Pennsylvania law, insurers are permitted and, indeed, encouraged to defend their insureds under reservations of rights to provide the insureds with a defense at the outset of the underlying tort litigation "if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Insurer's Brief at 35 (quoting <u>Jerry's Sport Center</u>, 2 A.3d at 541). Insurer indicates that providing an initial defense under a reservation of rights allows time for the factual issues in the underlying tort litigation to clarify so that the parties can determine which claims are covered by the language of the policy. As acknowledged by Insureds, an insurer's reservation of rights does not constitute a breach of the insurance policy.

In contrast to our case law which promotes the use of reservations of rights, Insurer highlights that the plain language of the policy forbids an insured "except at his own cost, [from making] any payments, assum[ing] any obligations or incur[ring] any expense." Insurance Agreement, Condition 6, <u>supra</u> at 4. Instead, the policy unambiguously grants Insurer the unilateral authority to settle the suit. Accordingly, it contends that the Insureds breached the policy by agreeing to settle without Insurer's

---

(…continued)

coverage. Under this test, if the insured accepts coverage, a bad faith standard is applied if the insured settles with the plaintiff without the insurer's consent. The parties contend that this test is contrary to Pennsylvania law, which does not allow insureds the option to reject an insurer's defense without breaching the policy. Moreover, the facts in this case do not suggest that Insureds rejected coverage. Accordingly, under the Superior Court's analysis, the <u>Cowden</u> bad faith standard would most likely apply upon the remand for a new trial.

consent, and that Insurer should not be responsible for the settlement absent a demonstration that Insurer acted in bad faith in refusing to settle under Cowden. Insurer argues that the insureds' rights are protected by the insurer's obligation to act in good faith in deciding whether to accept the offered settlement, and that the decision to reserve its right to deny coverage does not alter that good faith requirement.

Insurer asserts that it acted in good faith in refusing to accept the settlement in the case at bar. It notes that the interests of the Insureds and Insurer were aligned as it was very unlikely that the verdict would exceed the policy limits given the plaintiffs' weak evidence and the trial court's procedural and evidentiary rulings prior to the retrial. Insurer argues that many of the challenges initially raised in the reservation of rights letter had been mooted during the decades of litigation. It further contends that the Insureds would be unable to demonstrate bad faith as required by Cowden, as the evidence demonstrated Insurer's "bona fide belief" "that it had a "good possibility" of a defense verdict in the underlying suit and that "the chance of nonliability" was "real and substantial." Insurer's Brief at 41. Moreover, Insurer notes that its refusal to settle was in part based on the legitimate concern that other plaintiffs would file copycat claims against Insureds if Insureds settled the plaintiffs' weak claims.

While encouraging our adoption of the Cowden bad faith standard in the case at bar, Insurer criticizes the Morris fair and reasonable standard relied upon by the trial court and Insureds. Insurer contends that the Morris holding is "anathema to contract law principles established by this Court because it treats a performing insurer as though it breached its duty to defend." Insurer's Brief at 28. Insurer cites to a litany of decisions and commentators discrediting the Morris decision for treating an insurer that properly defends subject to a reservation of rights the same as the law treats an insurer that refuses to defend. Insurer observes that the Morris fair and reasonable standard

properly applies to an insured's decision to settle under Pennsylvania law where an insurer wrongfully refuses to defend or indemnify an insured, as in the Superior Court's decision in Alfiero v. Berks Mutual Leasing Co., 500 A.2d 169 (Pa. Super. 1985), but argues that it should not be extended to cases where an insurer has not breached its duties but, instead, has defended subject to a reservation of rights.

Insurer rejects Insureds' reliance on Brakeman, Conroy, and Paxton, supra at 12. It observes that in those cases this Court refused to allow forfeiture of insurance coverage based upon "technical" breaches by the insured, such as failing to provide proper notice. Conversely, Insurer argues that an agreement to settle without consent is not a technical breach but rather undermines a fundamental aspect of the bargain between an insurer and an insured as to who controls the litigation. Insurer's Brief at 50. Additionally, Insurer questions the Insureds' reliance on Pennsylvania's public policy favoring settlement. Instead, Insurer asserts that the Superior Court's decision below will not encourage settlement but, rather, will lead to protracted litigation regarding whether a settlement is fair and reasonable.

Insurer is supported by a number of *amici curiae*.[12] *Amici* maintain that for the last sixty years the Cowden bad faith standard has properly accounted for the interests of insurers and insureds facing the potential of uninsured exposure (whether it be an excess verdict or claims not covered by the policy). *Amici* reject the implication that the Morris fair and reasonable standard is needed to address reservation of rights cases because the insured is in an unusually precarious situation of having the policy not cover losses. They retort that an insured can be placed in precarious situations even without a reservation of rights, as damages may exceed the policy limits or include

---

[12] The following *amici curiae* submitted briefs in support of Insurer: The Complex Insurance Claims Litigation Association and the American Insurance Association; The Pennsylvania Defense Institute; and Property Casualty Insurers Association of America.

punitive damages which are non-insurable. Instead, they contend that this risk is part of the bargain assumed by the parties to a liability insurance contract, which defines what losses are covered and the limits of the coverage, along with the applicable premiums necessary to provide the agreed upon coverage. They argue that while the Morris line of cases attempts to rebalance the bargain agreed to by the parties, the Cowden bad faith standard properly balances the parties' interests without doing violence to the clear language.

Moreover, *Amici* maintain that allowing insured to violate the policy language by agreeing to settle without the insurer's consent so long as the settlement is "reasonable" will result in settlements in nearly all cases as "it seems there would always be some settlement figure, however slight, which would be 'reasonable' to accept," even if the underlying claim is frivolous. Pa. Defense Institute Brief at 7 (emphasis omitted). *Amici* explain that "a relatively small percentage of reservation[s] of rights actually create types of conflicts of interest that truly expose an insured to uninsured losses." Id. at 7. Instead, they contend that most reservations of rights resolve during the course of the litigation and are merely a "reminder of the terms of the contract as applied to the facts in the lawsuit", which cannot be deemed to constitute a breach of the contract. Id. at 12.[13]

---

[13] As an example, *Amici* note that in a water damage case resulting from a ruptured water line, an insurer would likely issue a reservation of rights in regard to any claims for mold damage which would be subject to a mold exclusion, even though the bulk of the claims would be fully covered and no mold claims would likely be advanced by the plaintiff. It notes that the Morris fair and reasonable standard fails to take into account the difference between this type of "soft" reservation of rights, which is unlikely to alter the interests of the parties, and a "hard" reservation of rights. With a "hard" reservation of rights, the insurer views the claims as possibly covered, requiring a defense, but ultimately unlikely to be covered by the policy, such as when intentional actions are also pled in negligence. Brief of Pa. Defense Institute at 25-27.

In this case, we are faced with a discrete issue of first impression that is nonetheless informed by longstanding Pennsylvania insurance law. Specifically, we are asked to decide the appropriate standard to apply in determining whether an insurer is liable under its insurance policy for a settlement made by its insured without securing the insurer's consent, when the insurer is defending the claim subject to a reservation of rights. In deciding whether to extend our Cowden bad faith test to this scenario or to adopt the Morris fair and reasonable standard or a variant thereof, we first consider our precedent relating generally to the interpretation of insurance contracts and specifically to an insurer's reservation of rights. Next, we review how Pennsylvania courts, in Cowden and Alfiero, have approached related but distinguishable questions involving an insured's decision to accept or forgo a settlement offer absent the insurer's consent to settle. Finally, before adopting a variant of the Morris fair and reasonable standard, we examine how our sister courts have approached this specific issue of an insured's decision to accept a settlement offer over the insurer's objection, where the insurer has provided a defense subject to a reservation of rights.

General Insurance Policy Interpretation and Reservation of Rights in Pennsylvania

"The interpretation of an insurance contract is a question of law, [and] our standard of review is de novo." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (internal citations and quotation marks omitted). "Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, we must give effect to that language." Id. However, "[i]f doubt or ambiguity exists it should be resolved in insured's favor." Jerry's Sport Center, 2 A.3d at 540.

Relating to the propriety of an insurer's defense subject to a reservation of rights, the parties and *Amici* observe that an insurer's duty to defend is distinct from and broader than its duty to indemnify. Id. at 540, 543-44. "An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Id. at 541. The insurer must defend the insured even in an action that is groundless or likely to later be deemed not covered by the policy. The insurer refuses to defend "at its own peril," as it can be subject to bad faith damages if it fails to defend without good cause. Id. at 542. This broad duty to defend is mutually beneficial as it protects the insured "from the cost of defense" while allowing the insurer "to control the defense to protect itself against potential indemnity exposure." Id. at 545.

Where an insurer provides a defense, the insured is "at risk of breaching the insurance contract" if it rejects the insurer's defense. Id. We have emphasized that an insured is "obliged to cooperate" with the insurer defending the action. Id. Further, our precedent allows the insurer to defend subject to a reservation of rights, which permits the insurer to control the defense from the beginning of the litigation while still alerting the insured to the potential lack of coverage. Id. We observed, however, that where the insurer believes that coverage does not exist, the insurer should deny coverage to "allow the insured to control its own defense without breaching its contractual obligation to be defended by the insurer." Id. at 542. We further encourage insurers to seek declaratory relief to eliminate the uncertainty regarding its responsibility for continued defense and ultimately for indemnity coverage. With this understanding of the burdens and benefits to both parties resulting from the broad duty to defend and the reservation of rights procedure, we next review how Pennsylvania courts have addressed related disputes between insurers and insureds pertaining to pre-trial settlement offers.

<u>Pennsylvania's Approach in Related Scenarios of Cowden and Alfiero</u>

As discussed by the parties, this Court, in <u>Cowden</u>, considered a case involving an insurer's refusal to settle. The issue presented was whether an insurer acted in bad faith in refusing to settle, when the ultimate verdict far exceeded policy limits, thus subjecting the insured to substantial costs that could have been avoided had insurer agreed to settle pretrial. We recognized that the weight of authority supported the conclusion that an insurer may be liable for the entire judgment against an insured "regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty." <u>Cowden</u>, 134 A.2d at 227.

In regard to the decision to settle, we observed, that the interests of the parties are "substantially hostile" where there is little or no likelihood of a verdict or settlement within policy limits. <u>Id.</u> at 228. "In such circumstances, it becomes all the more apparent that the insurer must act with the utmost good faith toward the insured in disposing of claims against the latter." <u>Id.</u> We acknowledged, however, that there is "no absolute duty on the insurer to settle a claim when a possible judgment against the insured may exceed the amount of the insurance coverage." <u>Id</u>. After considering how other courts had weighed the competing interests, we set forth the insurer's proper consideration of the insured's interests:

> It means that when there is little possibility of a verdict or settlement within the limits of the policy, the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated upon all of the circumstances of the case, that it has a good possibility of winning the suit. While it is the insurer's right under the policy to make the decision as to whether a claim against the insured should be litigated or settled, it is not a

> right of the insurer to hazard the insured's financial well-being. Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly.

Id. Although no bad faith was found in Cowden, the Court suggested that in the event of a bad faith determination, the insurer would be subject to the entire judgment, even the amount in excess of the policy limits. Id. at 227. While instructive, Cowden does not control in the case at bar because, in Cowden, the insured did not settle but rather allowed the insurer to continue its defense, whereas Insureds in the case at bar accepted the settlement without Insurer's consent.

In contrast, in Alfiero, our Superior Court addressed a case where the insured entered into a settlement without the consent of its excess insurer, where, unlike the case at bar, the excess insurer breached the insurance policy by refusing to defend or indemnify the insured, even after a declaratory judgment that the insurer had a duty to defend. Notably, the settlement had been presented to the excess insurer and was less than the excess insurance policy limits. The court held that, given that the excess insurer had breached the duty to defend, the insured was free to "negotiate a settlement according to terms intended to preserve its assets from execution." Alfiero, 500 A.2d at 172. The court noted that there was no evidence of collusion on the part of the insured. Accordingly, it held that the settlement could be imposed upon the breaching excess insurer "so long as it was done in good faith and the settlement was fair and reasonable." Id. As noted, Alfiero is distinguishable from the case at bar because here Insurer did not breach the policy by refusing to defend but instead offered a defense subject to a reservation of rights.

Other Jurisdictions' Approaches to Settlement Absent Insurer's Consent in Reservation of Rights Cases

Absent Pennsylvania caselaw addressing an insured's decision to settle without an insurer's consent where an insurer is defending subject to a reservation of rights, we consider the decisions of our sister courts faced with similar dilemmas.[14] We observe that Insurer claims that a majority of courts have rejected Morris while the Insureds claim that most courts have adopted tests consistent with Morris. Rather than attempting to tally the votes, we recognize that well-intentioned, thoughtful jurists have found themselves on both sides of the Morris divide. Moreover, our review of other court's decisions on this question reveals that courts are often swayed by the facts of the case to either adopt a test protective of the insurer or the insured based on which party acted in an arguably improper manner in that peculiar case. After consideration, like many of our sister courts, we adopt a variant of the Morris fair and reasonable standard limited to those cases where an insurer defends subject to a reservation of rights and breaches its duty to settle, as described herein, in a case where the policy is ultimately found to cover the relevant claims. As fully developed infra, in such cases an insured may accept a settlement over the insurer's refusal where the settlement is fair, reasonable, and non-collusive.

---

[14] The issues presented in this case only arise in a subset of reservation of rights cases where the interests are not aligned in considering settlement. Indeed, the parties in the case at bar recognize that insureds' and insurers' interests are generally aligned even in many reservation of rights cases where settlement is in the best interest of both insurer and insured. Where the interests are not aligned, both parties are often acting with substantial uncertainty as they consider settlement. There is uncertainty whether the insurance policy covers the claim, whether the insured will be determined to be liable to the plaintiff for the damages, and, if the insured is liable, whether the damages will exceed the policy's coverage limits. While an insurer must act as a fiduciary toward its insured, it is obligated only to provide coverage for which the insured paid premiums.

We first address the seminal case of <u>Morris</u>. The Arizona Supreme Court aptly summarized the conflicting interests of an insurer and an insured where questions are raised regarding whether the policy covers the claims. While acknowledging the propriety of a reservation of rights defense, the court observed that an insured is "placed in a precarious situation" because the insured faces the potential of paying a verdict in excess of policy limits or the entire verdict if it is ultimately determined that the policy does not cover the claim. The court rejected the insurer's argument that the policy's "cooperation clause gave it a right to force the insureds to reject any settlement, no matter how reasonable, risk trial, and place themselves at danger of a judgment larger than the policy limits or one that might not be covered." <u>Morris</u>, 741 P.2d at 251. It concluded that "such an interpretation of the cooperation clause hamstrings insureds while granting the insurer a double bite at escaping liability" by being able to contest the insured's liability and the coverage defense. <u>Id.</u>

In contrast, the court also recognized the danger in not allowing an insurer to defend under a reservation of rights and instead forcing it to choose whether to defend without reservation or refuse its defense. In an oft-cited passage, the court explained the insurer's dilemma:

> This solution puts an insurer honestly attempting to perform its duties between Scylla and Charybdis. The insurer must either give up its right to raise tenable coverage defenses or its right to insist on full application of the cooperation clause.

<u>Id.</u> at 251-52.

The Arizona court opined that, rather than forcing this choice, the better solution "would permit the insurer to raise the coverage defense, and also permit an insured to protect himself from the risk of noncoverage or excess judgment, while at the same time protecting the insurer from unreasonable agreements between the claimant and the

insured." Id. at 252. The court concluded that the insurer who "reserves the right to deny the duty to pay should not be allowed to control the conditions of payment." Id. Instead, it opined that the reservation of rights "narrows the reach of the cooperation clause" to allow the insured to settle in certain cases absent the insurer's consent. Id.

In a somewhat problematic statement, the court held that that "the cooperation clause prohibition against settling without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy."[15] Id. The court, however, required the "agreements must be made fairly, with notice to the insurer, and without fraud or collusion on the insurer." Id. Again arguably overstating its holding, the court further opined, "The insurer's reservation of the privilege to deny the duty to pay relinquishes to the insured control of the litigation, almost as if the insured had objected to being defended under a reservation."[16] Id.

In speaking to the question of the reasonableness of the insured's settlement, the court relied heavily on the decision of the Minnesota Supreme Court's in Miller, 316 N.W. 729, and observed that an "insured being defended under a reservation might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance." Morris, 741 P.2d at 253. To protect the insurer, the court held

---

[15] This sentence broadly suggests that the insured can settle any claim for which the insurer defends subject to a reservation of rights. We agree with *Amici*, however, that not all reservations of rights are equal, see supra at 17 n.13. The mere fact that an insurer restates that it will not cover what the insurance policy does not cover, where it arguably might be part of the damages sought, does not automatically result in allowing the insured to settle the entire suit. Parties and courts may need to consider whether a particular reservation of rights justifies diverging from the contract's cooperation clause, a question which is not squarely before this Court.

[16] Notably, Insureds in this case argue that the reservation of rights does not entirely relinquish the insurer's control over the defense to the insured, but rather only allows the insured the limited discretion to accept a fair and reasonable settlement, while maintaining the insurer's control over all other aspects of the defense.

that the insurer would only be responsible for paying the settlement if coverage is eventually determined to apply and the insured demonstrates that the settlement was "not fraudulent or collusive and was fair and reasonable under the circumstances," as viewed by "what a reasonably prudent person in the insureds' position would have settled for on the merits of the claimant's case." Id. at 254 (emphasis omitted).[17]

A number of courts and commenters have criticized the Morris decision as an improper attempt to rewrite an insurance policy for the insured's benefit. Several courts have cited Windt's treatise, Insurance Claims and Disputes, critiquing the Morris

---

[17] An analysis similar to the Morris decision has been adopted in the following cases: Cay Divers, Inc. v. Raven, 812 F.2d 866 (3d Cir. 1987) (holding, similar to Morris, that a reasonable settlement effectuated by the insured does not bar the insured's action for indemnification against the insurer where a complaint is arguably within the scope of insurance coverage and the insurer discharged its duty to defend by providing independent counsel, but reserved its right to contest coverage); Midwestern Indemnity Company v. Laikin, 119 F.Supp. 2d 831, 842 (S.D. Ind. 2000) (following Morris and holding that a "consent judgment with a covenant not to execute would bind the insurer on issues of the insured's liability and the extent of injured parties' damages" if: coverage is shown; the consent judgment did not result from bad faith; and the consent judgment was a reasonable settlement of the dispute); Spangler, 881 F.Supp. at 544 (following Morris and holding that "where the insurer was defending under a reservation of rights and had filed a declaratory judgment action contesting coverage, the insured's assignee is not barred from recovery from the insurer for a stipulated liability to which the insurer did not consent and the insured is not personally liable"); Great Divide Insurance v. Carpenter, 79 P.3d 599, 609 (Alaska 2003) (citing Morris for the proposition that a covenant settlement agreement is enforceable against an insurance company who defends an insured under a reservation of rights if the settlement agreement is reasonable); Patrons Oxford Ins., 905 A.2d 819, 827 (Me. 2006) (following Morris and holding that where an insurer defends an action against the insured under a reservation of rights, the insurer is bound by the settlement entered into by its insured to the extent that the settlement is reasonable and that coverage is deemed to exist); and Gainsco Ins. Company v. Amoco Production Co., 53 P.3d 1051, 1071 (Wy. 2002) (following Morris and holding that "when the insured and the claimant settle a case that is being defended by the insurer, even under a reservation of rights, the insured and the claimant should bear the burden of proving that the settlement was reasonable").

decision's failure to apply the plain language of the insurance contracts which "unambiguously state that the insurer will not pay a settlement that is entered into without the insurer's authorization. Courts cannot rewrite the contract to reach the opposite conclusion simply because they believe that it would have been 'fairer' if the contract had so provided." Am. Family Mut. Ins. Co. v. C.M.A. Mortgage, Inc., 682 F. Supp. 2d 879, 892 (S.D. Ind. 2010) (quoting Allen D. Windt, 1 Insurance Claims and Disputes 5th § 3.9 at 3-56)). The analysis further provided:

> An insured should not be allowed to enter into an unauthorized settlement simply because it is being defended pursuant to a reservation of rights. If it does so, and the settlement is not one that the insurer would have been duty-bound to accept, the insured should not be able to recover anything . . . . As long as the insurer complies with its contractual obligations, it should have the benefit of its contract, and should not be subjected to such disputes with its insured.

Id.

Other courts, recognizing some of Morris's shortcomings, have instead adopted a modified version, limiting the cases to which the fair and reasonable standard applies. Specifically, we look to the Supreme Court of Iowa, which addressed issues of law and fact similar to those before this Court. In Kelly v. Iowa Mut. Ins. Co., 620 N.W.2d 637, 639 (Iowa 2000), the insurer, faced with a wrongful death claim brought against its insured, defended its insured subject to a reservation of rights, asserting that the employee exclusion provision of the policy resulted in a lack of coverage because the victim was alleged to be an employee of the insured. The insurer properly provided independent counsel to the insured, while contesting its coverage obligations. The insurer, however, refused to engage in settlement negotiations because it contended that the tort defense would be successful. Nonetheless, the insured ultimately settled with

the victim's estate for $507,500, where the insured agreed to pay $7,500 and the estate agreed not to make further claims against insured but to seek the additional $500,000 from insurer, which constituted the policy limits. When victim sought to recover the $500,000 from insurer, insurer defended claiming that the insured had breached the policy by settling. In response, insured claimed that insurer breached the policy by reserving its rights and by refusing to approve the settlement.

The Iowa Supreme Court recognized its prior case law, similar to our Superior Court's decision in Alfiero, holding that when an insurer refuses to provide a defense outright, it breaches the insurance policy (assuming the policy is later determined to apply), releasing the insured from its contractual obligations and setting it free to settle as it sees fit. However, the court observed that in the case before it, as in the case at bar, the insurer had provided a defense, even though it also reserved its rights to contest coverage. The Iowa Supreme Court emphasized that Morris and other decisions have held that an insured may settle without obtaining the insurer's consent in a reservation of rights case as if the insurer had breached the policy by reserving its rights. Kelly, 620 N.W.2d at 642 (citing Cay Divers, Inc. v. Raven, 812 F.2d 866, 870 (3d Cir. 1987); Spangler, 881 F.Supp. at 545; Morris, 741 P.2d at 252)). The court rejected this aspect of the Morris line of cases, observing that "the reasoning of these cases is flawed because they permit an insured to breach his duties under the policy without losing coverage, even though there has not been a breach of the contract by the insurance company." Id. at 642.

Instead, the Iowa Supreme Court applied a more nuanced analysis based upon its observation that an insurer breaches its duty to its insured when it refuses to settle in the appropriate case. It recognized its prior caselaw, similar to our analysis in Cowden, finding that the insurer can commit bad faith by refusing to settle in an appropriate case. It extended this analysis to cases where an insurer defends its insured subject to a

reservation of rights and denies consent to a reasonable settlement offer. The court recognized that the insurer does not breach its duty by denying consent because the policy provides that the insurer has control over the defense and any settlement. Instead, the court, similar to Insureds' argument in the case at bar, held that the denial of consent to a reasonable settlement offer releases the insured from its duty not to settle absent the insurer's consent.

The court explained its holding:

> Certainly under these circumstances, where the insured may ultimately be responsible for a judgment if coverage is found not to exist, it is extremely important that the insurance company, who is controlling the defense, fulfill its contractual obligation to settle where appropriate. One commentator has observed that an insurer may breach the contract by failing to settle an appropriate case, even though its failure to settle is attributable solely to the company's negligence. See 1 Windt § 5.14, at 329. This commentator suggests that, [']recognizing that the company has, despite the absence of bad faith, breached the insurance contract, the company should be precluded from enforcing the provisions in the policy inuring to its benefit, such as the one prohibiting unauthorized settlements by the insured.['] Id.

Kelly, 620 N.W.2d at 644.

Given that the duty of good faith includes a duty to settle in appropriate cases, the court held that when faced with a reasonable settlement demand in a reservation of rights case, an insurer "must either abandon its coverage defense and pay the demand or lose its right to control the conditions of settlement." Id. The court held "that when an insurer provides a defense under a reservation of rights and rejects a fair and reasonable settlement demand that a reasonable and prudent insurer would pay, the insured is free to consummate the settlement on terms that protect the insured from any

personal exposure." Id. at 645. If coverage is later found to apply, the insurer will be liable for the insured's settlement up to policy limits. Id. at 644-45 n.6.

Other courts have likewise considered reasonableness of a settlement to encompass consideration of "facts bearing on the liability and damage aspects of plaintiffs' claim, as well as the risks of going to trial." Miller, 316 N.W.2d at 735; see also Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois, 785 N.E.2d 1, 14 (Ill. 2003) (same). Moreover, courts place the burden of demonstrating the reasonableness of settlement on the insured or its plaintiff. Miller, 316 N.W.2d at 735 ("The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent.").

Considering our prior decisions in Cowden and the Superior Court's decision in Alfiero, along with the line of cases following Morris, we adopt a variation on the Morris fair and reasonable standard limited to those cases where an insured accepts a settlement offer after an insurer breaches its duty by refusing the fair and reasonable settlement while maintaining its reservation of rights and, thus, subjects an insured to potential responsibility for the judgment in a case where the policy is ultimately deemed to cover the relevant claims. Like our sister states, we observe that a determination of whether the settlement is fair and reasonable necessarily entails consideration of the terms of the settlement, the strength of the insured's defense against the asserted claims, and whether there is any evidence of fraud or collusion on the part of the insured. See e.g., Miller, 316 N.W.2d at 735 (requiring consideration of the risks of going to trial)).

We recognize that the test in the case at bar has attributes of the Cowden bad faith test, where an insurer's decision not to settle had to be supported by the conclusion "that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly." Cowden, 134 A.2d at 228. Under the

Cowden bad faith test, however, if the insured establishes that the insurer breached its duty of good faith by failing to settle, the insurer is held responsible for the entire verdict, which resulted from the bad faith decision not to settle, even if it far exceeds policy limits. In contrast, if an insurer breaches its duty to settle while defending subject to a reservation of rights and the insured accepts a reasonable settlement offer, the insured need only demonstrate that the insurer breached its duty by failing to consent to a settlement that is fair, reasonable, and non-collusive, as described above, rather than demonstrating bad faith by the insurer, as the damages sought are subject to the policy limits to which the insurer originally contracted.[18] See Kelly, 620 N.W.2d at 645 ("The bad faith standard is simply not appropriate here, where the issue is one of *contractual* liability as opposed to *extra-contractual* liability") (emphasis in original).

In this case, after an extensive trial where the jury was presented with voluminous evidence relating to the strength of the underlying action and the settlement offer, the jury determined that the settlement was "fair and reasonable from the perspective of a reasonably prudent person in the same position of [Insureds] and in light of the totality of the circumstances," a standard which we adopt herein as the proper standard to apply in a reservation of rights case where an insured settles following the insurers' refusal to consent to settlement. Notes of Testimony, Sept. 19, 2011, at 2009. We conclude that

---

[18] The dissent opines that we distinguish the case at bar from Cowden based on the fact that Cowden did not involve an unauthorized settlement, which the dissent contends is a "distinction without a difference." Dissenting Op. at 4. Respectfully, we disagree with this simplification which focuses solely on the immediate facts without acknowledging the consequences resulting from the factual differences. As explained more fully above, we conclude that it is reasonable to require an insured to demonstrate the higher burden of bad faith in order to recover from the insurer an excess verdict, an amount which exceeds the coverage limits for which the insured paid premiums. Conversely, the lower standard of proof of a reasonable settlement is proper where the insurer's liability is confined to the previously contracted policy limits. Accordingly, we find Cowden, substantively distinguishable.

the Superior Court erred by requiring an insured to demonstrate bad faith when the insured accepts a settlement offer in a reservation of rights case.[19]  Accordingly, we reverse the decision of the Superior Court and reinstate the judgment of the trial court.

Former Chief Justice Castille and former Justice McCaffery did not participate in the decision of this case.

Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Justice Eakin files a concurring and dissenting opinion in which Mr. Chief Justice Saylor joins.

---

[19]    As noted supra at 10, we reject the Superior Court's adoption of the Taylor/Insured's Choice test.